FREDERICK STEHLE, JR., ET AL. *vs.* UNITED SURETY CO.

*Surety of Contractor Making Default Subrogated to His Rights—Attachment by Creditor of Contractor.*

The contractor for doing certain work for a railway company furnished a bond conditioned for its due performance with the appellee company as surety, by which it was provided that if the contractor should abandon the work, or be compelled to desist thereupon, then the surety should have the right to assume the contract and complete the same, in which event any reserve, deferred payment and all other money payable under the contract to the contractor should be paid to the surety in the same manner as it would have been paid to the principal, if he had duly performed the contract. This bond was executed in pursuauce of the contractor's written application for it in which the same stipulation was made. The contractor abandoned the work in the course of performance and at that time a certain sum was due to him by the railway company. The surety then assumed the coutract and completed it. The plaintiff, a creditor of the contractor, laid an attachment in the hands of the railway company to affect said sum, and the surety intervened as claimant thereof. *Held,* that nnder the terms of the bond and agreement, the money owing by the railway company to the con-

tractor became payable to the surety, and that it is not liable to attach-
ment by the plaintiff.

· *Decided January 15th, 1908.*

Appeal from the Circuit Court for Anne Arundel County
(THOMAS, C. J.)

The cause was aagued before BOYD, C. J., BRISCOE,
PEARCE, SCHMUCKER and BURKE, JJ.

*James M. Munroe* (with whom was *James R. Brashears* on
the brief), for the appellant.

If the Surety Company has any right to this four hundred
and thirty-nine dollars it must be for the purpose of reimburs-
ing itself for a loss which it has sustained by reason of its
suretyship, and it is certainly incumbent upon the claimant as
a first step to recovery in this case to prove that it has sus-
tained loss.    The testimony in this case was absoultely devoid
of any proof or offer of proof to that effect, and therefore the
prayer of the defendant, Stehle, the attaching creditor, asking
the Court to rule, "That there is no evidence in the case legally
sufficient to entitle the plaintiff (claimant of the fund in this
·case), to recover the assets in this case admitted to be due by
the garnishee, for the reason the contract under ·which the
plaintiff claims the said assets is a contract of indemnity and
the plaintiff has offered ·no evidence of any loss or claim
against which it is entitled to be or seeks to be indemnified,"
ought to have been granted.

2. In Jones' application for a bond from the United Surety
Company he agrees to pay the company all loss which it
might incur by reason of having entered into the bond and also
agrees that upon his failure to comply with his contract the
bonding company might *take possession of all his plant, and
tools and complete the same,* and further agrees to accept vouch-
ers or other evidence *of any loss paid by the said surety com-
pany* under the aforesaid obligation as conclusive against him
both as to fact and extent of his liability.    He further agrees

that the said company should be *subrogated to all his rights as principal in the contract* and that any deferred payments or other money or property due to him at the time of any breach or default on his part should be *credited upon any claim that might be made upon the surety company.* In this connection it must be observed that there is not the slightest evidence that any claim was ever made against the surety company, that it ever incurred any loss which was to be reimbursed in any of the manners set out in the application for the bond, and above all, it must be borne in mind that there was and could be nothing due to Jones under his contract to which the surety company could be subrogated as principal in the bond unless and until all sub-contractors and laborers who had worked for him in constructing the work agreed to be executed under the contract, had first been paid by the railroad company out of the money earned as certified by the engineer, and this by the express terms of Jones' contract with the railroad company, and of Stehle's contract with Jones.

3. When we look at the bond we find that provisions are made as to the rights of the surety company in the event of Jones' abandoning his contract, but as the bond was not made and executed until the 18th day of June, 1906, it could not affect the provisions of the prior contract between Jones and the railroad company made on the 6th day of June, 1906, in reference to the protection of subcontractors and other persons doing the work, nor is there anything in the language of the bond that undertakes expressly so to do, and it should not be given by implication any such construction. Stehle must be presumed to have done the work under the protection of the provisions in the contract between Jones and the railroad company for the security of subcontractors, laborers and other persons, and as by the terms of the contract any balance in the hands of the railroad company ascertained by the engineer to be due to Jones was first applicable to the claims of Stehle as subcontractor, he had a perfect right to seize it by attachment. The whole bond, as well as the application, proceeds upon the theory that the surety company is to be

protected, indemnified, and reimbursed as far as possible against any loss that it might sustain by reason of its suretyship, but the very foundation of any such legal liability to the surety company on the part of anybody is some loss by the surety company, which it is incumbent upon it to show, and it is respectfully submitted that there is not a scintilla of evidence of any loss by the surety company in this case, but, on the contrary, the officer of the surety company, who was put upon the stand by the claimant, when asked the question by attorney for the attaching creditor, Stehle, expressly stated that he did not know and could not tell whether the surety company had suffered any loss without examining the books. There is, therefore, a total and absolute failure to prove the very fact which should be the foundation of the claimant's right to the money in this case which Stehle has attached.

Is the surety company entitled to anything more than reimbursement? If so, upon what principle? Is it possible that the surety company can complete this contract at a profit and the men who did the work, that earned the money, go unpaid, and that too in the face of an express provision in the contract to the contrary? Why compel Stehle to sue the surety company? And in what form of action would he sue? Would his action be at law for "money had and received," or in equity for an "accounting?" Why this unnecessary circuity of action when, as this record shows that the contract is completed, the surety company's employee, Brian, is fully paid, there are no liens and the time for filing liens is past. The surety company has suffered no loss, there are $439.57 in the hands of the railroad company, and everybody paid except Stehle, the man whose labor earned that identical money.

4. Whether, therefore, we consider this question from the standpoint of subrogation, suretyship, or indemnity, there is no principle, upon the evidence in this case, under which the claimant is entitled to the money in the hands of the railroad company. It is well settled that a surety is not entitled to be subrogated to the rights of his principal unless he has paid in full the debt due by his principal. While we have been able

to find no case which seems to cover the precise point which is herein involved, and while we confess our inability to properly appreciate the precise difficulty in the mind of the learned Court below in reference to the question herein involved, we beg to refer to the following authorities as seeming to throw light on the principle herein involved:    *Parrott* v. *Chestertown Bank*, 88 Md. 515; *Martindale* v. *Brock*, 41 Md. 578; *Orem* v. *Wrightson*, 51 Md. 34; *Neptune Insurance Co.* v. *Howard*, 3 Md. Ch. 334.

If this be regarded as a contract of indemnity, the article entitled, "Indemnity Contracts" in the 10th volume of American and English Encyclopedia of Law is full on the subject that there can be no right whatever under the contract until loss has been incurred, and no right to recovery unless loss is shown by proper evidence.

The express conditions set out in the bond are made conditions precedent to the right of the obligee, the railroad company, to recover against the obligor, the surety company, and have no bearing whatever on the right of the attaching creditor Stehle, who is expressly protected by the terms of the contract of Jones, with the railroad company, which made whatever sum of money was certified by the engineer to be due by the railroad company, to Jones, under the contract, to be first applicable to the payment of the subcontractors and laborers before Jones could be entitled to any part of it, and it is contended that that provision in the contract between Jones and the railroad company that provided that no part of the money certified by the engineer to be due to Jones by the railroad company should be assignable by act of the party or operation of law, had reference to and must be construed to have reference to assignments of such sums of money to strangers to the contract, and not those who are expressly provided for therein and made in a sense privy thereto by its express terms, such as the subcontractors and laborers, whose labor and toil constructed the work for which the money was paid and for whose protection that provision was inserted in the contract.

5. The sum of money attached in the hands of the railroad company by Stehle was not earned by the surety company (appellee), nor by Brian, to whom the contract to complete the work was sublet by the surety company upon the default of Jones, the original contractor; but this money had been earned by Stehle for Jones, for whom Stehle was working as subcontractor.   All the work done by the surety company, through Brian, was paid for, and as far as the evidence shows the surety company suffered no loss, nor does it appear that anyone suffered loss except Stehle.   Yet the effect of the judgment below is to take the money away from the man who earned it and who, by the express provision of the contract set out in the record, was entitled to it, and to give the money to the surety company which has no legal, moral or equitable claim to it.

*Ridgely P. Melvin,* for the appellee.

By the terms of the bond and the application for it the parties themselves have settled very clearly and conclusively the question as to who is entitled to just such fund as the one involved in this case.   Said fund is nothing more nor less than a credit or "deferred payment" arising out of the contract between Jones and the railways company and is a sum that was due and owing Jones on August 10th, 1906, the time when he abandoned said contract.   Upon Jones' default and the assumption by the surety company of Jones' contract, the parties themselves expressly contracted that "all deferred payments and all other moneys provided by said contract to be paid to the principal shall be paid to the surety at the same time and under the same conditions as by the terms thereof, such moneys would have been paid to the principal, had the contract been duly performed by him," and that the said "United Surety Company shall be subrogated to all my (Jones') rights and properties as principal in said contract." If this sum in the railways company's hands was due and payable to Jones at the time he abandoned the contract, and if the surety company assumed said contract and completed

same in accordance with its terms, and became substituted for Jones under said contract, all of which is shown by the uncontradicted testimony in the case, how can the surety company's title to this fund be defeated? And particularly, how can it be defeated by Jones or by any one claiming under him, in the face of his express agreement above recited?

Immediately upon the abandonment of the aforesaid contract by Jones and its assumption by the surety company, the latter became entitled to all of the property and credits that the railways company held as the property of Jones, in precisely the same manner that Jones would have been entitled to them. In other words the surety company upon Jones' default became substituted for him under the contract, and title to all his deferred payments and all his other credits under the said contract with the railways company passed immediately to the surety company. Therefore when on August 16th, 1906, ten days after Jones' default, the aforementioned deferred payment of $439.57 under Jones' contract was attached by Stehle, this fund was no longer the property of Jones, but was the property of the surety company, having become such by express valid assignment from Jones to said surety company under the terms of the bond and the written application therefor aforementioned.

Therefore, the surety company is entitled to the fund in question, first of all, by virtue of its subrogation to the rights and credits of the *principal debtor* (Jones), which credits include said fund, of $439.57. This point alone is sufficient to support the appellee's claim.

Furthermore, said surety company, upon giving full satisfaction to the railways company of Jones' obligation under his contract, as it did give, became subrogated to all the *railways company's* rights, remedies, equities and securities as against Jones, and all credits which said railways company held or holds on account of this contract with Jones became immediately the property of the surety company upon its full and final completion of said contract, and the surety company's title to said credits as against Jones, dates back to the time

when the relation of principal and surety was entered into between it and Jones. *Orem* v. *Wrightson*, 51 Md. 34; *Freaner* v. *Yingling*, 37 Md. 491; *Nally* v. *Long*, 56 Md. 567.

Upon furnishing full indemnity to the railways company for Jones' default under his contract, the surety company became entitled not only to be subrogated to the railways company's rights and securities against Jones, but it became entitled, furthermore, to a complete *assignment* by the railways company of all credits and properties which said company held on account of the contract which was abandoned by Jones. *Brandt on Suretyship and Guaranty*, vol. 1, pp. 611–12; *Frost on The Law of Guaranty Insurance*, pp. 456–57; *Am. & Eng. Ency. of Law*, vol. 27, p. 208.

A surety who pays the debt of his principal is entitled not only to all the equities of the creditor as against the principal, but also against all persons claiming under him, such as subsequent purchasers of the debtor's lands, with notice of his right. And he may also be subrogated to the rights of the principal debtor against third persons. 27 *Am. & Eng. Ency. of Law*, 209. *The surety is entitled to actual possession of all collateral securities immediately on payment of the debt. Ibid*, p. 210.

Therefore the appellee is entitled to the fund in question not only by virtue of its subrogation to the rights, credits and properties of the *principal debtor* (*Jones*) in the hands of the original creditor (the railways company), but it is also entitled to said fund by virtue of its substitution to the place of said *creditor* under the aforementioned contract and is thus invested with the title to all credits and securities which said creditor held as the property of Jones.

It is difficult to understand on just what grounds Stehle, the attaching creditor, claims title to the abovementioned fund. His contract was exclusively with Jones and the uncontradicted testimony in the case is that he was not known at all in the contract between Jones and the railways company. The fund in question was purely and simply an outgrowth of this contract., *to which Stehle was in no sense a party*. He therefore

certainly stands in no better position in regard to said contract than does Jones, under whom he claims, and yet he asserts title to a fund which Jones himself, by express agreement, has transferred and assigned to the surety company. And he claims benefits under a contract with which he had no privity whatever.

The whole basis of the appellant's claim seems to be that the surety company's title to the fund in question, which in all other respects is admitted to be indisputable, is defeated absolutely because it has failed to show in this case that it has suffered a pecuniary loss by reason of its suretyship for Jones. Or, in the language of the appellant's prayer, which was rejected by the Court below, the surety company is not entitled to recover the assets admitted to be due by the garnishee "for the reason that the contract under which the plaintiff claims the said assets is a contract of indemnity, and the plaintiff has offered no evidence of any loss or claim against which it is entitled to be, or seeks to be, indemnified."

And here the appellee begs to state with emphasis,—for this seems to be the rock on which the appellant and the appellee split,—that it does not contend that it is entitled to receive more than just *indemnity* or *reimbursement* on account of the contract of suretyship with Jones and the railway company. But the appellee does contend that the question as to whether or not it has suffered any loss under the aforementioned contract is not in any way involved in this case nor does it in any manner affect the only question which is at issue, namely, the right of the surety company to receive, *in the first instance*, from the railways company the fund which the latter holds as a credit on account of the contract abandoned by Jones.

The appellee fully recognizes the general principle of law that such a contract is a contract of indemnity, pure and simple, but submits that just as the obligee under the bond, after full indemnification, is presumed in law to hold any excess *in trust* for the surety who has furnished the indemnity, so the surety, *being in the first instance entitled to all credits*

*and properties of the principal debtor in the hands of the obligee*, after having received full reimbursement therefrom, holds whatever excess there may be *in trust* for the principal debtor or whoever may be entitled to the same.   *Frost on the Law of Guaranty Insurance*, 454, 455; *Sheldon on Subrogation*, 185.

But, *in the first instance*, these credits go to the surety, for *immediately* upon the abandonment of his contract by the principal debtor and its assumption by the surety, title becomes vested in the latter to all credits and securities which the debtor may have on account of his said abandoned contract.   This is so, chiefly, because the contract between Jones and the surety company expressly so provides.   The right of the surety company to this fund of $439.57 dates back to the time when Jones abandoned his contract.

BRISCOE, J., delivered the opinion of the Court.

On the 16th of August, 1906, the plaintiff, Frederick Stehle, Jr., caused an attachment to be issued out of the Circuit Court for Anne Arundel County against the defendant, Samuel Jones.   The attachment was laid in the hands of The Maryland Electric Railways Company as garnishee a corporation doing business in this State.

The suit was instituted to recover the sum of three thousand one hundred and eighty-one dollars and fifty cents alleged to be due and owing from the defendant, to the plaintiff for work done and materials furnished for the B. & A. S. L. R. R. between stations Revell and Arnolds, in Anne Arundel County.

On the 1st day of May, 1907, the garnishee appeared and pleaded, (1). That there was justly due and owing to the accouut of Samuel Jones, the sum of four hundred and thirty-nine dollars and fifty-seven cents, as by an annexed account. (2). That the fund was held subject to the settlement of the question, whether Jones or his surety, the United Surety Company, is entitled to the fund attached in its hands.

On the 12th day of April, 1907, the appellee, the United Surety Company, intervened by petition, as claimant of the property attached, alleging in substance that it was a body corporate,

with its home office in the city of Baltimore.  (1). That the money, goods and chattels, in the schedule annexed to the attachment issued in the case, at the time of the laying of the attachment were and ever since, have been, and now are, the property of the appellee corporation, (2). That it is entitled to the money, chattels and credits attached.  And it prays judgment as to whether the plaintiff ought to have condemnation of the sum of money at issue, in the attachment, and returned therein as of the money, goods, chattels and credits of the defendant Jones.

Issue was joined, and from a judgment on finding of Court, in favor of claimant, for assets, ($439.59) admitted by the garnishee with interest, this appeal has been taken.

The controversy here it appears arises out of the contentions as to the meaning and proper construction of a bond executed by the appellee company, as surety, in favor of the garnishee company, guaranteeing the faithful performance of a contract between the railway company and the defendant, Jones, to do certain grading for the last named company between Revell and Arnold's stations, in Anne Arundel County along the line of the road.

The questions are presented by a single exception and that is, to the rejection by the Court of a prayer offered by the defendant at the conclusion of the case.

The defendant by this prayer asked the Court to rule that there was no evidence in the case legally sufficient to entitle the claimant of the fund to recover the assets admitted to be due by the garnishee for the reason that the contract under which the plaintiff claims the assets is a contract of indemnity, and the plaintiff has offered no evidence of any loss or claim against which it is entitled to be or seeks to be indemnified.

The vital facts of the case upon which the ruling was asked are practically undisputed and are as follows:  On the 8th of June, 1906, the Baltimore and Annapolis Short Line Railroad Company, now the Maryland Electric Railways Company, contracted with the defendant Samuel Jones to do certain grading for the company between Revell and Arnold's

stations, in Anne Arundel County, under a written contract set out in the record.

By the contract the defendant was required to give bond and upon application the appellee became surety on this bond in favor of the railway company for the faithful performance of the work according to the terms of the contract. The bond was accepted by the company, and contains the following express condition, as applicable to this case. If the said principal shall voluntarily abandon said contract, or be lawfully compelled by the obligee to cease operations thereunder by reason of his non-performance of any of its terms or conditions, then the surety shall have the right in its option to assume the said contract and to sublet or complete the same, and if the contract shall be assumed by the surety, then as such contract is duly performed, any reserve, deferred payments, and all other moneys provided by said contract to be paid to the principal shall be paid to the surety at the same time and under the same conditions as by the terms thereof, such moneys would have been paid to the principal, had the contract been duly performed by him. And if the said obligee shall complete or relet the said contract, then any forfeitures provided in said contract against the principal, shall not be operative as against the surety, but all reserves, deferred payments, and all other moneys provided in said contract which would have been paid to the principal had he completed the contract in accordance with the terms, shall be credited upon any claim the said obligee may make upon said surety.

And the written application for the bond signed by the defendant, Jones, contains this provision: "And I do further agree in the event of any breach or default on my part of the provisions of the contract hereinbefore mentioned, that the United Surety Company, as surety upon the aforesaid bond, shall be subrogated to all my rights and properties as principal in said contract, and that deferred payments, and any and all moneys and properties that may be due and payable to me at the time of such breach or default, or that may thereafter become due and payable to me on account of said contract

shall be credited upon any claim that may be made upon the United Surety Company, under the bond above mentioned."

It further appears the defendant Jones on or about the 10th of August, 1906, abandoned the work, under the contract. Subsequently in September, 1906, the appellee company, after notice of the defendant's default, assumed the contract and completed the work, in accordance with its terms. The amount of assets confessed by the railroad company to be due and payable at the date (August 10th, 1906), of the discontinuance of work, for work done under the contract, was four hundred and thirty-nine dollars and fifty-seven cents. That the sub-contractor, Brian, had been paid in full, and the work fully completed in accordance with its terms.

The plaintiff, Stehle, in the attachment suit was a sub-contractor of the defendant, Jones, and testified that he had done part of the work under the contract between the defendant and the railroad company prior to the date it was sub-let by the appellee company to its sub-contractor, Brian, and there was due him the sum of $3,181.50 under this contract.

It is obvious then that the fund here in dispute is claimed on the one hand by the attaching creditor, the plaintiff below, as the sub-contractor of the defendant, Jones, and on the other by the claimant, the appellee company, who as surety on the defendant's bond, completed the original contract between the defendant and the railway company.

The solution of the question it seems to us will be found in the contract itself, as evidenced by the provisions of the bond agreed upon by the parties themselves. The bond stipulates that if the principal shall voluntarily abandon the contract, as was confessedly done in this case, then the surety shall have the right in its option to assume the contract and to sub-let or complete the same, and if said contract shall be assumed by the surety, then as such contract is duly performed, any reserve, deferred payments and all other moneys provided by the contract to be paid to the principal shall be paid to the surety at the same time and under the same conditions as by the terms thereof, such moneys would have been paid to the principal, had the contract been duly performed by him.

Now according to the uncontradicted testimony the fund in question was due and payable at the time the contract was abandoned, and it is clear that upon the assumption by the appellee company of the contract and the completion of the work, all of the property and credits of the defendant under the contract passed to the surety company by express assignment to the appellee under the terms of the bond herein set out.

Manifestly, the defendant, Jones, who abandoned the contract, could assert no title to the fund in dispute, because by the express terms of the bond, and according to the provisions of the agreement executed by him at the time of his application, he stipulated that upon his default the appellee company should be subrogated to all his rights and properties, as principal in the contract. It is difficult to see upon what legal or equitable principle the plaintiff as sub-contractor under Jones, could be placed in a better position as to this fund than the defendant himself, under whom he claims. Obviously, Jones under the admitted facts, could not set up, or claim title to the fund, because by the express terms of the contract, upon the default, and the assumption of the contract by the appellee, the title to all credits, securities, &c., vested in the appellee.

The right of the surety in this case is not only "that of subrogation pure and simple, but a right to an assignment by the creditor," under the plain provisions of the contract of suretyship between the parties.

The principle of subrogation, assignment and substitution, as applied to those standing in the relation of principal debtor and surety, has been fully reviewed by this Court, in a number of cases. In *Orem, Ex'x.*, v. *Wrightson*, 51 Md. 34, this Court said, so soon as a surety pays the debt of the principal debtor, equity subrogates him to the place of the creditor and gives him every right, lien and security to which the creditor could have resorted for the payment of his debt. As between the principal debtor and the surety, it is in the nature of a purchase, by the surety from the creditor. It operates an assignment in equity of the debt and all legal proceedings

upon it, and gives a right in equity to call for an assignment of all securities, and in favor, of the surety, the debt, and all its obligations and incidents are considered as still subsisting. *Brandt on Suretyship, &c.*, vol. 1, p. 611; *Stump* v. *Warfield*, 104 Md. 530.

In the present case, the right of the surety company to the fund relates back to the date of the default by the defendant, and cannot be defeated by the defenses sought to be invoked on behalf of the plaintiff. *Nally* v. *Long*, 56 Md. 567.

Mr. Brandt, in his work on *Suretyship and Guaranty, supra*, says: "In cases where the person paying the debt or performing the obligation of another stands in the relation of surety or guarantor to the person whose debt or obligation has been performed, equity substitutes him in the place of the creditor or obligee as a matter of course, without any special agreement to that effect and without requiring any further showing to be made of circumstances entitling him to subrogation. It has been said that the surety, upon the performance by him of his contract, is entitled to the original evidences of debt held by the creditor, and to any judgment in which the debt has been merged, as well as to all collateral securities held by the creditor.

We, therefore, hold, according to the express contract of suretyship between the parties in this case, and upon the well settled doctrine of subrogation and substitution, applicable to the case, that the appellee company is entitled to the fund here in question. There was no error in the rejection of the plaintiff's prayer, and as we approve of the finding of the Court below, the judgment will be affirmed.

*Judgment affirmed, with costs.*