## AMERICAN SURETY CO. OF NEW YORK v. FINLETTER.

### MASSACHUSETTS BONDING & INS. CO. v. FINLETTER et al.

(Circuit Court of Appeals, Third Circuit. June 6, 1921.)

Nos. 2457, 2624.

1. **Receivers** ☞54—**Appointment of receiver fixes status of property and rights of parties.**

  The appointment of a receiver for an insolvent contractor for public works, while a number of contracts were uncompleted, fixed the status of the property and the rights and equities of all parties as of that time.

2. **Assignments** ☞52—**Liens** ☞7—**Receivers** ☞158(1)—**Assignment to surety creates equitable lien as against general creditors.**

  A provision of a contract between a contractor for public work and the surety on its bond for the payment of subcontractors and materialmen that in case of default by the contractor "deferred payments * * * that may thereafter become due and payable on account of said contract shall be credited for any claim that may be made upon the said surety by reason of its suretyship" *held* an assignment, which created an equitable lien in favor of the surety as against general creditors of the contractor,

on so much of such deferred payments as remained above the cost of completing the work after appointment of a receiver for the contractor, whether such completion was by the receiver or by a surety.

**3. Liens ⬅7—Surety on contractor's bond entitled to equitable lien on deferred payments due under contract.**

The right of a surety on the bond of a contractor for public work, conditioned for payment of claims for labor and material, who paid such claims on insolvency of the contractor, to an equitable lien on deferred payments which became due on completion of the contract, by virtue of an assignment made by the contractor when the bond was given, *held* not affected by the fact that such deferred payments were in part from a city and in part from a railroad company, which shared the cost of the work, and that the bond ran to the city alone.

**4. Subrogation ⬅28—Surety paying part of debt held not entitled to subrogation against materialmen.**

Where the surety on the bond of a contractor for public work, conditioned for payment of claims for labor and material, on insolvency of the contractor paid into court the amount of the obligation on its bond, but the same was insufficient to pay material claims in full, it is not subrogated to the right to prove the amount so paid as a general claim against the insolvent estate in competition with the claims of the materialmen for the balance due them.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

In the matter of the receivership of Peoples Brothers, Inc.; Robert W. Finletter receiver. From a decree distributing funds, the American Surety Company of New York and the Massachusetts Bonding & Insurance Company separately appeal. Decree reformed and affirmed.

For opinion below, see 254 Fed. 489.

Joseph J. Tunney, Edward Hopkinson, Jr., and Arthur Dickson, all of Philadelphia, Pa. (Henry C. Willcox, of New York City, of counsel), for appellant American Surety Co. of New York.

Murdoch Kendrick, Joseph J. Tunney, and Edward Hopkinson, Jr., all of Philadelphia, Pa., for appellant Massachusetts Bonding & Ins. Co.

Horace Michener Schell, of Philadelphia, Pa., for appellee Finletter.

James Wilson Bayard, of Philadelphia, Pa., for appellee American Bridge Co.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. These cases, growing out of the same business failure, have as many angles as they have parties and subjects-matter. We shall endeavor to view them separately in so far as that is possible.

The questions concern the distribution of funds arising from a receivership in equity. Peoples Brothers, Inc., a Pennsylvania corporation, hereinafter called the Contractor, was under several contracts with the City of Philadelphia for the construction of public works. These contracts called for partial payments as construction progressed and for deferred payments pending completion.

[1] Before the works had been completed the Contractor defaulted and a receiver was appointed. With the receivership, the rights and

equities of all parties—contractors, claimants, creditors—became fixed, and a status was established from which all matters, past and prospective, are to be gauged. The court receiving the estate must regard this status as the chart to guide and govern its subsequent administration and final distribution. The rights of contract parties, of creditors of different classes, and of the receiver, are to be dealt with as they were found legally to exist when receivership brought the business to an end and at the same time brought into active operation laws applicable to everything that had gone before and to everything that was to follow. Regarding the appointment of a receiver as the fact, and the date of his appointment as the time, on which every phase of the instant controversies turns, we shall address ourselves to the questions brought here for review.

## Byberry Farms.

[2] Peoples Brothers, Inc., entered into a contract with the City of Philadelphia for the erection of a power house at Byberry Farms, a municipal property. Failing to complete the work, a receiver was appointed. From the status of the contractor's affairs established by the receivership two things immediately developed: First, the receiver refused—as he had the right to do—to continue the contract and complete the work; second, his refusal brought to light a fact, anterior to the receivership; namely, that when the Contractor entered into this contract, he gave the City two bonds with the American Surety Company of New York as surety; one conditioned upon the completion of the work, and the other conditioned upon the payment of all claims for labor performed and material furnished under the contract. Resort to both bonds was had at once. The Surety Company completed the contract at a cost of $4,725.60 and paid in full all claims against the Contractor for labor and material amounting to $11,188.34.

During the progress of the work the City retained 15 per cent. of the amount due, of which 10 per cent. was to be paid on the completion of the contract and 5 per cent. one year thereafter. After completing the contract the City paid the Surety Company $7,231.60, being the final payment less the 5 per cent. of the contract price to be retained for one year. Of this sum the receiver demanded $3,150.40, representing 10 per cent. of the work claimed to have been completed by the Contractor according to the last certificate by the architect prior to stopping work. Contesting the claim of the receiver the Surety Company turned over this sum to the receiver to await the outcome of this litigation.

The special master and the District Court recognized the surety's right under one bond to be reimbursed in full out of funds retained, and later paid, by the City for its cost of completing the contract, but denied the surety the right under the other bond to apply the balance of the money, so obtained from the City, on account of the amount it had expended in paying claims of laborers and materialmen. By its decree the District Court awarded this disputed balance to the receiver for the benefit of general creditors, thereafter treating the surety as a

general creditor in the amount of its disbursements. From this decretal disposition of the fund the Surety Company took this appeal, presenting as the question involved the following:

Where a surety gives bond to a City for the payment of sub-contractors upon municipal work and pays their claims in full, is the surety not entitled to be reimbursed therefor out of retained percentages under the contract as against the receiver of the defaulting contractor?

This question was argued on two theories, that of equitable subrogation and of assignment. The theory of equitable subrogation constituted the main contention and was argued by both parties with great vigor; and on that theory the case was decided. This issue had its rise in the written application made by the contractor to the Surety Company for the bond in question, which contained a paragraph of which the following is a part:

"VII. * * * And the Indemnitor (Contractor) further agrees in the event of any breach or default on his part in any of the provisions of the contract covered by said suretyship that the said surety, as surety, shall be subrogated to all the rights and properties of the Indemnitor in such contract. * * *"

The receiver, the special master, and the District Court took the perfectly sound position that neither the subrogation contemplated by the quoted provision nor subrogation on any other theory is applicable to this case, because:

"As under the Pennsylvania decisions the laborers and materialmen did not have any right against the percentages retained by the City, but are merely in a position of general creditors of Peoples Brothers, Inc., the right of subrogation which the Surety Company has cannot arise any higher than that of the creditors whom it has paid."

In this state of the law—laborers and materialmen having no rights to reserved percentages—there were, as to them, no rights to which the Surety Company could be subrogated. Likewise, Peoples Brothers, Inc., had no rights in the fund to which the Surety Company could be subrogated. Obviously, there was no right of subrogation anywhere. The Surety Company recognized this, for it conceded throughout that sub-contractors had no lien on the fund reserved by the City and that this fund could not have been reached by the subcontractors through any process against the City. Indeed, both sides viewed in the same light the controlling decisions of the Pennsylvania courts in this regard. Lesley v. Kite, 192 Pa. 268, 43 Atl. 959; Philadelphia v. McLinden, 205 Pa. 172, 54 Atl. 719; Sax v. School District, 237 Pa. 68, 85 Atl. 91.

But the Surety Company did not confine its argument to the question of subrogation, whether within or without the terms of the quoted provision in the Contractor's application for bond, but maintained on authority of Prairie State Bank v. United States, 164 U. S. 227, 17 Sup. Ct. 142, 41 L. Ed. 412 and Henningsen v. United States Fidelity & Guaranty Co., 208 U. S. 404, 28 Sup. Ct. 389, 52 L. Ed. 547, that, as a surety—which had paid all laborers and materialmen and had thus released the contractor from his obligations to them and had also satis-

fied the purpose of the City in requiring an obligation to see that laborers and supplymen were paid—it has an equity in reserved percentages superior to that of general creditors. In the Henningsen case the Supreme Court recognized in the surety a superior equity to that of a creditor, who, in that· case, had loaned money to the contractor with which to prosecute his work. It is this "superior equity" thus recognized by the Supreme Court that the Surety Company here asserts. Yet, in order to prevail in this case we do not believe the Surety Company is forced to invoke the doctrine of the Henningsen case, and of the Prairie State Bank Case, because as we read the record, it appears very clear that the Contractor and the surety themselves wrote the doctrine of those cases into their contract when arranging for the bond to be given the City. After agreeing that the Surety Company should be subrogated to all rights and properties of the Contractor in the event of his default—a provision which in the light of the Pennsylvania law was without force or effect—the Contractor did something more. It agreed that—

"Deferred payments and any and all moneys and securities that may be due and payable at the time of such default, or on account of extra work or material supplied in connection therewith, or that may thereafter become due and payable on account of said contract, shall be credited for any claim that may be made upon the said Surety by reason of its suretyship as aforesaid."

This purports to be an assignment of deferred payments by the Contractor to the Surety Company. If this was a valid assignment, it settles the case. But the special master and the court did not, on authority of Christmas v. Russell, 81 U. S. (14 Wall.) 69, 20 L. Ed. 762, regard it as a valid assignment, and, accordingly, held that upon the appointment of the receiver title to the percentages reserved by the City passed to the receiver for general creditors. The case of Christmas v. Russell turned mainly, if not entirely, upon a question of jurisdiction. Without discussing the views there expressed with reference to a valid equitable assignment, we are inclined rather to the views of the same court expressed in Ingersoll v. Coram, 211 U. S. 335, 29 Sup. Ct. 92, 53 L. Ed. 208, accepting the rule stated in Walker v. Brown, 165 U. S. 654, 17 Sup. Ct. 453, 41 L. Ed. 865, to the effect that an express executory contract in writing, whereby the contracting parties sufficiently indicate an intention to make some particular property or fund therein described or identified, a security for a debt or other obligation, creates an equitable lien on the property so indicated. Barnes v. Alexander, 232 U. S. 117, 120, 121, 34 Sup. Ct. 276, 58 L. Ed. 530; Hurley v. Ashbridge, 55 Pa. Super. Ct. 523, 526, 527; Stehle v. United Surety Co., 107 Md. 470, 68 Atl. 600.

Applying this rule to cases where a contractor, seeking surety, pledges deferred payments—moneys certain to be due and clearly indicated —as an inducement for the bond, the courts have very generally recognized such a pledge as a valid consideration moving to the surety, first, to induce it to enter into the bond, and second, at a reduced premium because of the reduced risk.

The obligation of the Contractor, having assigned to the surety deferred payments on default, became fixed as a part of the status of

the case established by the receivership. Such an obligation has been recognized by some courts as a valid assignment to be asserted in favor of the surety against the receiver as an equitable lien on reserved percentages. We find no courts that have held the contrary. The cases which we think rule this case, not in principle alone but on the facts as well, as in one case (Cox v. New England Equitable Insurance Co., infra) where the contract between the contractor and surety with reference to a bond was identical in substance and almost identical in terms, preserving the fund to the surety against the claims of general creditors, are: In re Scofield Co., 215 Fed. 45, 131 C. C. A. 353 (C. C. A. 2d); Cox v. New England Equitable Insurance Co., 247 Fed. 955, 160 C. C. A. 655 (C. C. A. 8th); Montgomery v. City of Philadelphia, 253 Fed. 473 (D. C. E. D. Pa.).

We see no reason why parties, if so disposed, can not make such an assignment a valid consideration of a contract. As this is what the parties in this case did, we are of opinion that the fund in dispute should be awarded the Surety Company.

### Stewart Street.

The Contractor entered into a contract with the City of Philadelphia for grading Stewart Street. Two similarly conditioned bonds were given by the Contractor with the American Surety Company of New York as surety. In this instance the receiver completed the contract and collected from the City a reserved percentage in the amount of $1,037.-63. The cost of completion to the receiver was $501.91. The surety demands the balance of $535.72 on account of claims it paid under its bond for labor and material in the sum of $664.08. This fund the District Court awarded the receiver for general creditors, allowing the Surety Company to prove its claim as a general creditor for the amount of its disbursements. The only difference between the claims made by the Surety Company for reserved percentages growing out of the Byberry Farms contract and out of the Stewart Street contract is that in the former the Surety Company, upon the receiver's election not to complete the contract, finished it and received payment therefor out of the reserved percentages; in the latter, the receiver elected to finish the contract himself and, similarly, received payment out of the reserved percentages.

While in the Byberry Farms contract the surety by completing the contract did the work that released the reserved percentages and made them available, the receiver under the Stewart Street contract did the work with that result. Yet we do not see that this affects in any way the assignments by the contractor to the surety of reserved percentages in the event of default. The assignment in each case was absolute, and, we think, was valid. We are of opinion, therefore, that this fund should be awarded the Surety Company.

### Fifty-Fourth Street Bridge.

The City of Philadelphia and the Pennsylvania Railroad Company entered into a contract with the Contractor for the construction of a bridge over the Railroad Company's tracks at Fifty-Fourth Street for

the sum of $37,000, of which it was agreed the City was to pay $22,-000 and the Railroad Company $15,000. In pursuance of Ordinances of Councils, the Contractor as principal, and the Massachusetts Bonding & Insurance Company as surety, executed and delivered to the City a bond in the sum of $11,100, conditioned upon payment by the Contractor of all claims for labor performed and material furnished in the execution of the contract. The Contractor defaulted and receivership followed. The receiver completed the bridge at a cost of $1,479.94. Claims for materials supplied toward construction were proved in the sum of $15,956.28. The surety paid into court $11,100, the full amount of its bond, which later was distributed among creditors in the form of a dividend of approximately 65 per cent. Upon the completion of the contract by the receiver there was due by the City $5,184 and by the Railroad Company $4,632. These sums, less the sum expended by the receiver in the completion of the contract, are held by him awaiting the outcome of this litigation, begun by the Bonding Company on its petition praying that the same be paid to it on the theory of equitable subrogation or of assignment.

One provision of the contract of the Contractor with the Bonding Company for the bond required by the City was similar in terms and identical in substance with that contained in the contract between the Contractor and the American Surety Company previously considered. It reads:

"In consideration of the company becoming surety, the said company shall as of the date hereof be subrogated to all of its rights, privileges, and properties as principal, or otherwise, in or under said contract, and the applicant further assigns, transfers, sets over and conveys to the said company, all of the deferred payments and retained percentages, and any and all moneys and properties that may be or hereafter becomes due and payable to the applicant (the Contractor) at the time of any breach or default in the contract," etc.

[3] In this case, as in the others, the argument revolved around the question of equitable subrogation; but in this case, as in the others, there appears in the light of the Pennsylvania decisions no ground, and because of the presence of a valid assignment of deferred payments, no occasion to discuss or decide any question of subrogation. The master however awarded the receiver the sum paid by the Railroad Company and the surety the sum paid by the City. The court, on exceptions, awarded both funds to the receiver on the ground that the principle of subrogation could not in this instance be invoked. We are constrained to reverse the court's action on our finding of a valid assignment to the Bonding Company of deferred payments due the Contractor. Nor are we disturbed in this conclusion by the fact that the bond in question runs only to the City. The Bonding Company's obligation to the City was for the performance of a given work and the payment of all labor and material claims incurred therein. The Bonding Company was induced to enter into this obligation upon the Contractor's assignment of "all of the deferred payments and retained percentages," among which were those of the Railroad Company quite as well as those of the City. This was

the consideration moving to the Bonding Company. The Bonding Company is seeking recovery on its contract. The City is not suing on the bond. We are of opinion that both amounts should be awarded the Bonding Company, as we see no distinction in principle between this case and the two cases previously decided, except in the next aspect which arises from a claim of

## American Bridge Company.

[4] American Bridge Company supplied the Contractor with material for the Fifty-Fourth Street Bridge and therefore came within the protection of the bond of Massachusetts Bonding & Insurance Company. When the Bonding Company paid the receiver the amount of its obligation, $11,100, the receiver therewith declared a dividend of about 65 per cent. As 35 per cent. of its claim remains unpaid, the Bridge Company, very naturally, stands with the receiver in this litigation in opposition to the claims of both surety companies for reserved percentages under the several contracts. As we have held against the receiver, we likewise hold against the Bridge Company—with this difference: In the cases of the American Surety Company, its obligation on each of its bonds was greater than the total of unpaid labor and material claims. Therefore the master and the court, while denying to the American Surety Company a right to the reserved percentages, permitted that company, after paying *in full* all labor and material claims against the Contractor, to stand as a general creditor and prove the amount of its disbursements as general claims. That provision of the decree will be no longer applicable—at least in its entirety—as the American Surety Company may, after these decisions, be made whole, or almost whole, by receiving the reserved percentages. But in the case of Massachusetts Bonding & Insurance Company, while it met its obligation in the full amount of the penal sum, that amount was not sufficient to pay in full all claims of materialmen. Just here, we think, the principle of subrogation enters into the case for the first time. As the Bonding Company did not discharge the claims of materialmen in full, it can not stand in their stead as a general creditor and prove claims for the partial payments it made; but before it can claim reimbursement for such payments it must wait until the general creditors have had their claims paid in full. Anything else would defeat the purpose for which the bond was required and would bring the Bonding Company into competition with the materialmen in their claims upon receivership funds and would proportionately decrease their recoveries.

The decrees of the court below, when reformed in harmony with this opinion, are in all other respects affirmed, with costs to the appellants.