ELGIN v. HOUSING AUTHORITY OF CITY OF FREDERICK.

Civ. No. 1302.

District Court, D. Maryland.

Oct. 15, 1943.

Charles Walter Baker, of Hagerstown, Md., and Benjamin B. Rosenstock, of Frederick, Md., for plaintiff.

W. Clinton McSherry, of Frederick, Md., for defendant.

COLEMAN, District Judge.

The question here presented is whether a subcontractor is to be preferred to his contractor's surety in an attachment suit instituted by the subcontractor against funds in the hands of the obligee under the surety's bond for completion of a housing project by the contractor in the City of Frederick, Maryland.

The present litigation was commenced in the Circuit Court for Frederick County, Maryland, by the laying of a nonresident attachment on the Housing Authority of the City of Frederick, a statutory agency of that municipality, against all credits and funds due by the Housing Authority to Sofarelli Bros., Inc., a New York corporation, the contractor, incident to the claim which was brought against the latter by the subcontractor, W. Lee Elgin, trading as Potomac Heating & Supply Company. Thereupon, Sofarelli Bros., Inc., by virtue of diversity of citizenship of the parties, caused the attachment and the statutory, companion direct suit, commonly known as the short-note case, to be removed to this court, where trial of the short-note case was had before a jury, resulting in a verdict in favor of the plaintiff for $2,128.68. An appeal was taken to the Circuit Court of Appeals from the judgment entered upon this verdict, and the judgment was affirmed.

The garnishee, the Housing Authority, filed its plea of nulla bona in the present, that is, the attachment suit, setting forth an assignment from Sofarelli Bros., Inc., to its surety, the Fidelity & Deposit Company of Maryland, this assignment being dated May 13, 1941, that is, thirteen days before the attachment was laid.

The claim of the plaintiff is based upon the following provision in the bond: "Now, therefore, the condition of this obligation is such that, * * * if the Principal shall pay all lawful claims of all persons, firms or corporations for all labor performed, or materials furnished for the performance of this contract failing which such persons shall have a direct right of action against the Principal and Surety under this obligation, then this obligation shall be null and void, otherwise, it shall remain in full force and effect."

The Housing Authority, garnishee, admits that it now retains and has had in its hands at all times since the laying of the attachment, $3,211.12, being balance due Sofarelli Bros., Inc., under their construction contract, which amount is more than sufficient to satisfy plaintiff's judgment obtained as previously explained. Plaintiff contends that the assignment by Sofarelli Bros., Inc., to its surety is void as to it, the plaintiff, and judgment creditor of the defendant-assignor, on the ground that plaintiff is, by the express language of the bond above quoted, one of those persons given "a direct right of action against the principal and surety" for all labor performed or material furnished in the performance of the contract.

Plaintiff did not attempt to make the surety a party to the short-note case, but after obtaining judgment in that case, plaintiff moved this court to have the surety made a third-party defendant in this, the attachment suit, but this motion was denied because the surety had not been made a party to the short-note case. The surety contends that it is entitled to a trial before a jury, if it so elects, and thereby to have it determined whether or not plaintiff has performed any labor or furnished any material in the completion of the contract in question, for which plaintiff has not been paid. In other words, the surety contends that the fact that the subcontractor has obtained a judgment against the contractor does not make the liability of the surety on the bond res adjudicata; that plaintiff

should have sued the surety in the first instance, instead of proceeding by way of nonresident attachment; and that, had it done so, both the question of the main contractor's liability to the plaintiff as a subcontractor, and the question of the surety's liability on the bond, could have been determined in one proceeding, but that since plaintiff did not elect so to do, the surety has not yet had an opportunity to assert its defense to the claim of liability on the bond.

With these contentions of the surety we do not agree when asserted for the purpose of defeating the right of the plaintiff to recover in the present attachment suit. We are to be governed by the Maryland law on the subject, and we find nothing in the Maryland decisions, or in any decision of the Supreme Court or of the Circuit Court of Appeals for this Circuit, which requires us to deny recovery to the plaintiff.

It is true the assignment by the main contractor, Sofarelli Bros., Inc., to the latter's surety, was made prior to the laying of the present attachment by the plaintiff; and notice of such assignment to the garnishee, the Frederick Housing Authority, was also prior. However, since the present plaintiff holds, as a subcontractor, an unsatisfied judgment against Sofarelli Bros., Inc., which judgment has been affirmed by the Court of Appeals and now stands incontestable as to its validity, we believe that plaintiff's right to reach any assets of his judgment-debtor, that is to say, Sofarelli Bros., Inc., cannot validly be thwarted by any action which the latter's surety may take with a view to protecting itself under its bond.

This is not a suit on the bond, so we are not called upon to determine whether the judgment which the plaintiff has obtained against Sofarelli Bros., Inc., alone makes the liability of the surety on the bond res adjudicata. We agree that had the plaintiff sued the surety in the first instance, instead of proceeding against his principal debtor by way of nonresident attachment, that would have been the quickest, most direct way to have a determination as to the surety's liability. Also, we may assume that the rule here applies that an indemnity insurer will not be estopped to set up the defense that the insured's loss was not covered by the contract or bond of indemnity, by the fact that the insurer participated in the action against the insured, —as did the surety in the present case, because it assumed charge of the suit brought by the plaintiff against Sofarelli Bros., Inc., in which the plaintiff obtained the judgment in question,—if at the same time the insurer gives notice to the insured,—as was done in the present case,—that it does not waive the benefit of such defense. But this does not mean that a surety, in the protection of his own interest as between himself and the debtor, may, under such circumstances as we here have, set up such a priority with respect to the debtor's assets that a judgment creditor of the debtor is forced to seek satisfaction of his judgment exclusively against the surety. In short, the subcontractor, having obtained his judgment against the main contractor, is not required to look to the latter's surety for payment, even though under Maryland law a bond such as the present one, covers not only any loss sustained by the obligees, but also any loss suffered by those who furnished labor or materials directly to the principals, by reason of nonpayment therefor. See Hartford Accident & Indemnity Co. v. W. & J. Knox Net & Twine Co., 150 Md. 40, 132 A. 261.

The notice of assignment by Sofarelli Bros., Inc., to the surety, bearing date of May 13, 1941, and addressed to the Housing Authority of the City of Frederick, reads as follows: "In consideration of the payment by the Fidelity & Deposit Company of Maryland, on behalf of Sofarelli Bros., Inc., of certain amounts due subcontractors, laborers and furnishers of material used in the construction of the Lincoln Apartments, Sofarelli Brothers, Inc., hereby authorizes and directs the Housing Authority of the City of Frederick, Maryland to pay the entire unpaid balance of our contract fund to the Fidelity & Deposit Company of Maryland. This includes earned but unpaid estimates, unearned estimates, final payment, retained percentages, any amounts due for extra work performed and any other moneys due Sofarelli Brothers, Inc., under its contract." We are unwilling to construe this assignment as subrogating the surety of the main contractor to the rights of the latter, or of the obligee under the bond, with respect to amounts retained by the obligee from sums earned by the main contractor, so as to defeat valid claims of unpaid labor or materialmen, since one of the specified conditions of the bond is for the payment of such claims, i. e., is intended for the di-

rect benefit of those who make them, and since, as appears from the record in the short-note case, after the assignment was made and before the laying of the present attachment, the assignment was modified by mutual agreement between Sofarelli Bros., Inc., and the surety whereby, in consideration of *the former, and not the latter*, assuming completion of the job, all funds contemplated by the assignment were to be deposited to the *joint account of surety and principal.*

Such decisions as Stehle v. United Surety Company, 107 Md. 470, 68 A. 600, are, we believe, not opposed to the conclusion which we reach in the present case. The Stehle case, it is true, held that under the terms of the bond there in suit, money owing by a railway company to one who contracted to do work for it became payable to the surety of such contractor, and that such money was not liable to attachment by a subcontractor, who had supplied work and materials. However, in that case, the bond did not run to subcontractors. It provided (page 481 of 107 Md., at page 601 of 68 A.): "If the said principal shall voluntarily abandon said contract, or be lawfully compelled by the obligee to cease operations thereunder by reason of his non-performance of any of its terms or conditions, then the surety shall have the right in its option to assume the said contract and to sublet or complete the same, and, if the contract shall be assumed by the surety, then, as such contract is duly performed, any reserve, deferred payments, and all other moneys provided by said contract to be paid to the principal shall be paid to the surety at the same time, and under the same conditions as by the terms thereof such moneys would have been paid to the principal, had the contract been duly performed by him. And, if the said obligee shall complete or relet the said contract, then any forfeitures provided in said contract against the principal shall not be operative as against the surety, but all reserves, deferred payments, and all other moneys provided in said contract which would have been paid to the principal had he completed the contract in accordance with the terms shall be credited upon any claim the said obligee may make upon said surety."

The Court said (page 483 of 107 Md., page 602 of 68 A.): "Manifestly, the defendant, Jones, who abandoned the contract, could assert no title to the fund in dispute, because by the express terms of the bond, and according to the provisions of the agreement executed by him at the time of his application, he stipulated that upon his default the appellee company should be subrogated to all his rights and properties, as principal in the contract. *It is difficult to see upon what legal or equitable principle the plaintiff as subcontractor under Jones could be placed in a better position as to this fund than the defendant himself under whom he claims. Obviously Jones under the admitted facts could not set up, or claim title to, the fund, because by the express terms of the contract, upon the default, and the assumption of the contract by the appellee, the title to all credits, securities, etc., vested in the appellee.*

*"The right of the surety in this case is not only 'that of subrogation pure and simple, but a right to an assignment by the creditor,' under the plain provisions of the contract of suretyship between the parties."* (Italics inserted.)

It will thus be seen that we are dealing in the present case with a situation quite different from that in the Stehle case. Here, there is no provision in the bond for assumption by the surety of performance of the contract, and the surety did not in fact take over and complete the job in the manner provided in the bond in the Stehle case, but merely had one of its own representatives supervise the balance of the job by agreement with the contractor.

We likewise find nothing in National Surety Co. v. County Board of Education, 15 F.2d 993, a decision of the Circuit Court of Appeals for this Circuit, which is contrary to the reasoning which we here adopt. That case merely held that a surety on a school building contractor's bond, having completed work after the contractor's default and having paid laborers' and materialmen's claims, could, in conformity with the laws of North Carolina, recover from the school board, percentages required to be retained and which had been assigned to the surety, where the latter's loss exceeded these amounts; that is, that such assignment created, in favor of the surety completing the contract, an equitable lien on the retained percentages. However, certain language of Judge Parker in rendering the decision of the court, is pertinent to the issue in the present case, and we believe supports our view. Judge Parker said (page 996 of 15 F.2d):

"The payments to laborers and material-men, for which credit was apparently allowed defendants by the District Judge, present a slightly more troublesome question, because of the fact that complainant was liable under the bond to those furnishing labor and materials in the construction of the building; but, upon mature consideration, we are satisfied that not even these payments can be justified by the defendants.

"Complainant, it is true, undertook in the bond that the contractors would pay for all labor done and materials and supplies furnished for the work; but upon the failure of the contractors to pay for same, the liability of complainant under the bond was to be enforced by a single suit, to which all persons claiming rights should be made parties. Public Laws of North Carolina, Session 1923, c. 100. There was no liability whatever on the defendants for labor and materials furnished, and claims therefor did not constitute a lien on the school building * * *."

It is to be noted that apart from other differences, there are these basic distinctions between the last-mentioned case and the present one: there the surety had actually assumed completion of the contract and it brought the suit on the bond, namely, suit was brought in the first instance by the surety to establish an equitable lien upon funds in the hands of the County Board of Education and to prevent those funds from being paid to subcontractors in alleged derogation of the surety's rights under its bond. Here the surety refuses to become a party claimant in the present controversy; resists any attempt to make it such, and yet the surety is in fact the alter ego of the garnishee in resisting payment to the plaintiff, by conducting the litigation for the garnishee for this purpose.

Finally, we believe that the decision of the Supreme Court in American Surety Co. v. Westinghouse Electric Manufacturing Co., 296 U.S. 133, 56 S.Ct. 9, 80 L.Ed. 105, lends support to our conclusion. In that case, a bond was given to the United States pursuant to 40 U.S.C.A. § 270, for the faithful performance of a construction contract and for the making of prompt payment to all persons supplying the principal with labor and materials in the prosecution of the work. It was held that the surety, as against the claims of materialmen, had no equity of reimbursement from funds of its insolvent principal until such claims had been settled in full; that such equity did not arise from the doctrine of the surety's subrogation nor from any express contract of the principal made before the latter became insolvent, to indemnify the surety out of particular funds, namely, retained percentages. The court said (page 139 of 296 U.S., page 12 of 56 S.Ct., 80 L.Ed. 105): "What concerns us here is the remedy available where the bond has been given under the mandate of a statute. Equity then forbids that the statutory security be whittled down indirectly by any promise of indemnity, general or specific. Debtor and surety may not effectually agree that materialmen and laborers shall have less of the general assets as the price of their right to recover on the bond. Through the bond and the statute a new relation has been established with a new set of equities, not subject to destruction at the pleasure of the principal. The integrity of that relation is in the keeping of the law."

It is true in the American Surety Company case, supra, the court was dealing directly with a bond given under a statutory requirement, the surety was a party to the suit, and the contractor was insolvent. But it is abundantly clear to us that the principle announced by the court sustains our reasoning. The bond in the present case was given in apparent conformity with statutory authority. See Annotated Code of Maryland, Art. 44A, Secs. 8 and 20.

Mr. Justice Roberts, although dissenting in the American Surety Company case, supra, did so only on the ground that the furnishers of material and labor and the surety company were all general creditors, entitled to no preference or priority over each other because the surety's principal was in bankruptcy. Mr. Justice Roberts stated that he agreed with the view of the lower court "that the indemnity contract between the contractor and the surety company (even if an assignment of a claim for retained percentages against the United States were valid, in view of Rev.St. § 3477 [31 U.S.C.A. § 203]) is too vague to amount to an assignment of the retained percentages; and that the surety is not entitled to subrogation either to the rights of the United States or of the materialmen and contractors." (296 U.S. 140, 56 S.Ct. 12, 80 L.Ed. 105).

To the same effect as American Surety Company v. Westinghouse Electric Mfg. Co., supra, are American Surety Co. v.

Finletter, 3 Cir., 274 F. 152, and United States Fidelity & Guaranty Co. v. Marathon Lumber Co., 119 Miss. 802, 81 So. 492. See also Prudence Corp. v. Geist, 316 U.S. 89, 96, 62 S.Ct. 978, 86 L.Ed. 1293, and cases there cited.

It is, of course, to be noted that all of the decisions just referred to involved insolvency of the contractor or principal obligor. But we see no sound reason for not giving to the plaintiff in the present case the benefit of the application of the same equitable principle that was adopted in those cases, because in the present case, the surety not only did not actually assume completion of the work, but (1) whatever might be determined ultimately to be the surety's liability on its bond as respects claims for labor and materials, the surety unquestionably would still owe the plaintiff *something* if the plaintiff could not collect from the obligee under the bond,—the present garnishee; and (2) the surety, by the position which it now assumes, has endeavored, for its own benefit, to thwart the plaintiff in liquidating through what is now an unimpeachable judgment, a claim, the payment of which the surety has expressly guaranteed in part, if not in fact in its entirety.

In the present case, the surety, through its counsel, asserts that the proximate cause of the excessive amount of litigation is not the desire of the surety to escape liability; that it has already suffered a net loss in the transaction in excess of $10,000; that at the time the present suit was instituted (May 26, 1941), the main contractor, Sofarelli Bros., Inc., were still working on the project and that, therefore, there was nothing to prevent plaintiff from suing that firm and the surety; that had such customary method been pursued, there would only have been one case and one trial; that nevertheless, plaintiff elected to adopt the unusual method of nonresident attachment against a defendant who was at that time actually present and subject to process; that the surety is entitled to have it determined by a fair trial, before a jury, if it so elects, whether or not the plaintiff has performed any labor or furnished any material for the performance of the contract for which he has not been paid; that had the plaintiff attempted at any time before the trial of the short-note case, to make the surety a party thereto, there could have been no valid objection on the part of the surety to this being done, and that then, both the question of the liability of Sofarelli Bros., Inc., to the plaintiff and of the surety's liability on the bond for overhead charges claimed by Elgin and allowed in the short-note case, could have been determined in the one suit.

■ This argument thus discloses the main underlying purpose for the surety's present position,—that it resists liability for certain items, namely, overhead expenses for which this court and the Circuit Court of Appeals have said the surety's principal is liable. We are not now saying that the surety might not have a right to resist liability, in a direct suit on its bond, for such items, but merely that it has no right to prevent the plaintiff from availing himself, if he prefers to do so, of an opportunity to obtain direct, prompt satisfaction, against his debtor, of his judgment which includes such items. And this seems all the more equitable since, as already pointed out, the surety has assumed the major defense of this entire litigation. What is commonly known as an equitable estoppel is that principle of law which operates to prevent a party from asserting his rights under a technical rule of law, when he has so conducted himself that it would be contrary to equity and good conscience to allege and prove a situation to have been other than he has represented it to be. See Maryland Casualty Co. v. Gates, 4 Cir., 290 F. 65; Rody v. Doyle, Md., 29 A.2d 290. We feel that the circumstances of the present case at least closely approach that situation.

■ Accordingly, the plaintiff is entitled to recover the amount claimed with interest, from the funds in the hands of the garnishee, the Housing Authority of the City of Frederick.