WALKER, J., dissenting.
On 8 August, 1905, the Highlands Hotel Company, Incorporated, entered into a written contract with J. A. Jones for the erection and entire completion of the Selwyn Hotel. On 22 August, Jones entered into a written contract with the Carolina Heating and Plumbing Company, for the plumbing, heating, gas fitting and electric work required by his contract with the hotel company. The J. L. Mott Iron Works furnished the plumbing company with a large quantity of material required by its contract with Jones, and the plumbing company was indebted to it therefor, on 18 October, 1906, in an amount exceeding $4,400. The Southern States Electric Company also furnished material to the plumbing company required by its contract with Jones, for which the plumbing company was indebted to it, on 7 January, 1907, in the sum of $1,125.26, of which sum $998.63 was contracted on and prior to 26 October, 1906. On 18 October, 1906, the plumbing company gave the Mott Iron Works an order on Jones for $4,400 "for goods furnished on Selwyn Hotel," to be paid "as same becomes due to" the plumbing company, which order Jones "accepted" on that date. The sum of $4,400 was not then due the plumbing company by Jones. On 8 December, 1906, the plumbing company was placed in the hands of H. S. Hall as receiver. The contract with Jones being uncompleted, under order of *Page 408 
the court, the receiver, Hall, completed the contract, at a cost of $1,774.46, and the work required by the contract with Jones was duly accepted as satisfactory. On 7 January, 1907, the electric company (421) was indebted to it in the sum of $1,125.66, attached a detailed statement of its claim, and further stated, "We claim a lien for this amount." Upon the completion of the contract of the plumbing company, the sum of $5,369.21 was due it. This action was begun on 24 May, 1907, and Jones, the Mott Iron Works and the Plumbing company were made defendants. On 23 November, 1908, the parties to the action agreed, in writing, that Jones should pay Hall, the receiver, $1,774.45; that the should pay the Mott Iron Works $2,469.12 as a credit on its order of $4,400, and that he should pay to the clerk of the Superior Court of Mecklenburg the sum of $1,125.64, to abide the determination of this action — these three amounts aggregating $5,369.21. This agreement further provided: "That the question as to the liability of the said J. A. Jones to pay interest on the amount of his indebtedness to the Carolina Heating and Plumbing Company, to wit, the sum of $5,369.21, shall also abide the final decision of the court." The preamble of this agreement provided: "That a partial settlement of said controversy shall be had, without prejudicing the rights of any of said parties, as to so much of said controversy as shall remain unsettled." The agreement was performed by Jones. The contract between Jones and the hotel company, among other stipulations, contained the following, deemed pertinent to this appeal:
3. The contractor shall find all materials, labor and services, tools and scaffolding, implements and power of every kind necessary for the full completion of said building, as set forth in these specifications.
5. The sum payable under the last clause shall be paid by installments in the following manner, viz: the architect will, on or before the first of each month, make an estimate of the material and labor put into the building during the past month, deducting fifteen per cent, which estimate will be paid by the owner to contractor on presentation of same. On completion, to the satisfaction of the architect, and acceptance of the work, the remaining fifteen per cent will be paid to the contractor by the owner, the right to any and all payments being subject to the contractor's compliance with the lien and building laws of the State of North Carolina.
The contract between Jones and the plumbing company, among other stipulations, contains the following deemed pertinent to this appeal:
5. To discharge all debts that become or may become a lien (422) on the building, for work done or materials furnished on the prosecution of the contract. *Page 409 
6. To give to J. A. Jones a good and satisfactory bond, in the sum of $6,000, for the full and faithful performance of this contract by the Carolina Plumbing and Heating Company. J. A. Jones, party of the second part, agrees to pay the Carolina Plumbing and Heating Company the sum of $21,283.88 as full consideration of the performance of this contract by the Carolina Plumbing and Heating Company, the same to be paid on the certificate of the architects, as follows: eighty-five per cent of the work done to be paid at the end of each month, and full settlement to be made when the work is completed and accepted by the architects.
Upon the foregoing facts the referee concluded that Jones was liable for interest from 15th July, 1907 (the first day of the return terms of court), to 23 November, 1908; that the Mott Iron Works was entitled to have the remainder of its order of $4,400 paid in full, and the balance, after paying the costs of the court, should be paid to the electric company. Exceptions were filed by Jones to the conclusion that he was liable for interest, and by the electric company to the other conclusions of the referee. His Honor, after hearing the matter, overruled Jones' exception, from which he did not appeal, and, upon the exceptions of the electric company, held that the money paid into the clerk's office, increased by the amount of interest due by Jones, should be divided pro rata between the Mott Iron Works and the electric company in proportion to their respective claims, and the costs, including the referee's allowance, should be paid by the two said companies in the same proportion. To the judgment directing the distribution of the fund pro rata, and the payment of the costs, the Mott Iron Works excepted and appealed therefrom to this Court.
After stating the case: In the outset it is well to eliminate certain matters presented in the able and exhaustive briefs of counsels, that, in our opinion, are not material in determining the rights of these two contending creditors. The hotel company is not a party to this action, and it is admitted that no notice was given to it, as owner, under sec. 2020, Revisal, by either of these creditors of the plumbing company before its full and final settlement with Jones. Therefore, in our opinion, the contract between the hotel company and Jones, or any of its stipulations, are not material to or do not affect the determination of the rights of these creditors. No lien upon the (423) hotel company's property and no liability against the hotel company is sought to be declared or adjudged. The effect of the agreement between *Page 410 
all parties to this action on 23 November, 1908, was to leave for adjustment (1) the liability of Jones for the interest; (2) the disposition of this interest, if he were adjudged liable to pay it, and the disposition of the sum of $1,125.64 paid by Jones into the clerk's office. It is not suggested by the appellant, Mott Iron Works — and as the electric company did not appeal, it could not suggest it — that Jones was liable to any personal judgment (except for the interest) for any sum. The only question, therefore, presented by this appeal is, was his Honor right in directing the distribution of these funds between these two creditorspro rata in proportion to their debts against the plumbing company? The appellant iron works contends that the order of 18 October, accepted by Jones, was an assignment of that much of the amount of the contract price, and to be paid by Jones as it became due the plumbing company, and, as between Jones and the plumbing company, was a discharge and satisfaction of the amount of the contract price; that the consideration, expressed in the order and, in fact, admitted, was for the value of materials furnished by the appellant iron works and used in the construction of the Selwyn Hotel; that at the date of the order Jones had no notice that the electric company was furnishing materials to the plumbing company, and no notice of any indebtedness therefore by the plumbing company to the electric company, and no notice was given Jones until 7 January, 1907. The appellee contends (1) that the contract between Jones and the plumbing company, and Jones and the hotel company, impresses the fifteen per cent of each contract price to be retained respectively by Jones and by the hotel company, with a trust in favor of all laborers and material men; and the particular provisions of the contract between Jones and the plumbing company which produce this result are sections 5 and 6, quoted in the statement preceding this opinion; (2) that Jones could not, in view of these provisions, by accepting an order, defeat the rights of laborers and material men whose claims might become a lien on the hotel company's property; that appellee's claim was such a claim; and, further, that Jones' acceptance of the order was conditional and not absolute, and therefore not tantamount to a discharge and satisfaction pro tanto of the contract price.
Both the appellee and appellant are "material men," and for the materials furnished under contract with the plumbing company (424) are primarily creditors of the plumbing company, and, it being admitted that neither has availed himself of the provisions of our statutes regulating and giving a lien for its protection, each must assert and work out its rights through the plumbing company, without aid from the provisions of those statutes. In Broyhill v. Gaither,119 N.C. 443, this Court held that the lien for materials was only by *Page 411 
virtue of the statute. Clark v. Edwards, 119 N.C. 115. Adapting the language of this Court in Snow v. Comrs., 112 N.C. 335, to the facts of the present case, it becomes obvious that the work of the plumbing company was the plumbing, heating, gas fitting and electrical equipment and its installation, a portion of which was done by the Mott Iron Works and the electrical company — not for the hotel company or on its credit, not for Jones or on his credit, but for the plumbing company and on its credit. Neither Jones nor the hotel company have ever owned the iron works or the electric company (except by the accepted order in favor of the iron works) for that work. The relation of debtor and creditor has not existed between them (except as created by the accepted order in favor of the Mott Iron Works). It was entirely competent for Jones, the debtor, and the plumbing company, the creditor, to agree that the iron works should receive a certain part of the money to become due the plumbing company by Jones, as no third party had acquired any lien on the fund. "The effect of the arrangement between these parties was as if Brewster had drawn a draft on Ellington, Royster Co., in favor of Snow, for the sum mentioned in the note, to be paid out of the contract price, and Ellington, Royster Co., had accepted the draft."Snow v. Comrs., supra. It is held in that opinion, by Burwell, J., that the facts created an assignment of so much of the contract price to become due as was necessary to discharge the note. It is obviously true that Jones was not absolutely and unconditionally bound by his acceptance of the order directing him to pay the Mott Iron Works, as the installments of the contract price became due the plumbing company, to pay $4,400 to the Mott Iron Works; but his acceptance, absolutely and unconditionally, obligated him to pay such sums as they became due, and for such sums Jones became debtor to the Mott Iron Works. Beardsleyv. Cook, 143 N.Y. 143. It is admitted by Jones that the contract with the plumbing company was satisfactorily performed and he became liable for the full contract price, and that the admitted balance was $5,369.21, increased by the interest charge. It cannot be material that in December, when the receiver of the plumbing company was appointed, the plumbing company had not completely performed its contract, and that the receiver, by direction of the court, completed it to (425) the entire satisfaction of Jones. Jones makes no complaint of delay, nor did he object to the receiver's finishing the work. Herter v.Goss, 57 N.J.L. 42. It does appear, however, that at the date of the appointment of the receiver about ninety per cent of the work contracted for by the plumbing company had been performed. In Lauer v. Dunn,115 N.Y. 405, it is held that an unaccepted order, drawn by a contractor on the owner, in favor of a creditor of the contractor, was an assignmentpro tanto to the fund in the owner's hands, though at the time, *Page 412 
under the contract between the contractor and owner, the amount was not then payable to the contractor and he could not have sued therefor. The following cases sustain the doctrine that an accepted order on a fund, though not payable at the time, is an assignment pro tanto, and several of these cases are similar in their facts to the present case: Bourne v.Cabot, 44 Mass. 305; Risley v. R. R., 62 N.Y. 240; Bates v. Bank,157 N.Y., 322; Harvey v. Bremer, 178 N.Y. 5; Brick Co. v. Stratton
(Tex.Civ.App.), 53 S.W. 703; Herter v. Goss, 57 N.J.L. 42; Beardsley v.Cook, 143 N. Y., 143; Ellison v. McCahill, 10 Daly (N. Y.), 367; 1 Daniel Nego. Instr., secs. 508, 513. In our opinion, these authorities clearly establish the contention that the order of the plumbing company on Jones, in favor of the Mott Iron Works, and accepted by Jones, was an assignment pro tanto of the contract price, subject only to the condition that the contract should be performed and accepted by Jones. This was done. The electric company, however, contends that the contract price was impressed with a trust in the hands of Jones, which he was required to see executed, to wit, "the discharge of all debts that become or may become a lien on the building for work done or material furnished in the prosecution of the contract." This contention is rested upon the decision of this Court in Gastonia v. Engineering Co.,131 N.C. 359, and Gastonia v. Engineering Co., 131 N.C. 363.
The electric company and the Mott Iron Works occupied, in any view, the same relation to the plumbing company, to Jones and the contract between Jones and the plumbing company; both were material men, having furnished material to the plumbing company; both were creditors of the plumbing company. If the claim of one could become a lien, the claim of the other could; if one was a beneficiary of any trust, the other was. So, while occupying this relation, the iron works secured the order on Jones from the plumbing company and Jones' acceptance; (426) Jones had no notice, at that time, that the electric company was a creditor of the plumbing company and certainly had no right to so assume. Jones paid the plumbing company nothing after his acceptance of the order. The contract between Jones and the plumbing company does not set aside any named percentage or amount as a fund, out of which laborers and material men shall be paid. The plumbing company was, without this stipulation in the contract, bound to pay its own debts. The obviously paramount and controlling purpose of this provision was to protect the building of the owner from liens. It is admitted that this was done; that neither of these creditors attempted to subject the building to a lien. That no particular sum is set apart will appear from this provision of paragraph 6 of the contract: "The same to be paid on certificate of the architects, as follows: eighty-five per cent *Page 413 
of the work done to be paid at the end of each month, and full settlement to be made when the work is completed and accepted by the architects."
We do not think, under the decision of this Court in the cases ofGastonia v. Engineering Co., supra, any trust was impressed upon the contract price stipulated to be paid by Jones to the plumbing company by the provision of this contract. In the Gastonia case, in which numerous cases are cited, it is held that the property of a city is not subject to a lien for work done or material furnished, in the absence of a statute expressly permitting it, and it is in accord with public policy that the contracts with cities should contain such provisions. The distinction between the present case and the Gastonia case is clearly set out in the following extract from the opinion of Gray, J., in Bates v. Bank,157 N.Y., 322, where the provisions of the contract considered was more definite and specific than the provisions of this contract: "The reasoning to this conclusion (that the purpose of the provisions was the protection of the lienors, the laborers and the material men) was made upon the authority of certain cases in this court, which were thought to be controlling, viz., Bank v. Mayor, 97 N.Y. 355, and Bank v. Winant, 123 N.Y. 265. These cases related to contracts made by the city of New York in 1875 and 1876. They contained, by direction of an ordinance of the city, this clause: `The said party of the second part (meaning the contractor) hereby further agrees that he will furnish said commissioner (meaning the commissioner of public works) with satisfactory evidence that all persons who have done work or furnished materials under this agreement, and who may have given written notices to said commissioner, . . . have been fully paid or secured such balance. And in case such evidence be not furnished, as aforesaid, each amount (427) as may be necessary to meet the claims of the persons aforesaid (meaning the persons who had done work of furnished materials) shall be retained from any moneys due the said party of the second part, under this agreement, until the liabilities aforesaid shall be fully discharged or such notice withdrawn'. Those cases held, in effect, that the purpose of that provision was to protect those employed under the contractor. That was its only purpose, and the reason for it was obvious. At the time when the contracts were made, there was no lien law relating to work done and materials furnished on public works in cities. Such an act was not passed until 1878. The construction of the ordinance which required such a provision in city contracts as given in the Bank Cases supra, was that it did not secure to person furnishing labor and materials to contractors with the city some of the advantages which the lien laws of the State gave to mechanics and material men. The city, in such *Page 414 
a contract, assumed no express liability to pay them, and could not be sued therefor; but it was placed under the implied obligation to hold, as trustee, the unpaid balance due upon its contract for the benefit of such persons. . . . The distinction between these cases and the cases where the contract is between private parties is marked; for in the latter a lien could be acquired which would be binding upon the owner, and therefore the presence of a clause in the contract dispensing the owner from the obligation of payment, if there were liens upon the building, is only for his relief and protection." Lumber Co. v. Struck, 146 Cal. 266; Schrieberv. Bank, 99 Va. 257. There is an uniform concurrence of the authorities we have been able to find, that there is a provision for reserving a certain percentage of the contract price until final completion, and such contracts are not made with public corporations, the stipulation for reservation may be waived by the owner of the property affected by the contract, unless he has received such notice of claims as is required to be given by the lien laws in force. Some of the States have made this the subject of legislation and forbidden a waiver or variation from the terms of the contract, to the injury of laborers and material men; and in this State the Legislature has made provision and prescribed the conditions for subjecting the amount retained by the owner to the payment of the debts contracted by the contractor for labor and materials. Revisal, sec. 2021. The provisions of our lien laws are comprehensive, adequate and simple; but for laborers and material men to obtain their protection, they must comply with their (428) conditions. We do not think, therefore, that Jones, the debtor, violates any principle of law or equity by agreeing to pay the Mott Iron Works and admittedly just debt against the plumbing company, his creditor, having no notice of any indebtedness of the plumbing company, to the electric company. At the time, what difference could it make to Jones whether he paid the plumbing company or paid its creditor upon its order? His only concern could have been that the total payments did not exceed the contract price — certainly when he knew that what he agreed to pay was applied to the payment for materials used in the hotel building.
In our opinion, his Honor should have directed the payment of the balance due the J. L. Mott Iron Works on its order, and the remainder of the fund to be paid to the electric company. In refusing to so order, there was error. The costs of the action will be readjusted. The electric company will pay the costs of this appeal.
Error.
WALKER, J., dissenting. *Page 415