PRATT LUMBER CO., Inc., v. T. H. GILL CO.

(District Court, E. D. North Carolina. February 26, 1922.)

No. 404.

1. **Highways ⊜⟶113(4)—Right to lien under construction contract depends on state statutes.**

   The right of laborers and materialmen to liens under a contract for the construction of highways made and to be performed in North Carolina depends on the statutes of that state.

2. **Highways ⊜⟶113(4)—No lien on highway in favor of contractors, laborers, or materialmen.**

   Under C. S. N. C. §§ 2433, 2437, et seq., one contracting to construct a highway and subcontractors, laborers, and materialmen have no lien on the highway.

3. **Highways ⊜⟶113(4)—Laborers and subcontractors held without right of priority over other creditors of contractor.**

   As one contracting to construct a highway has no lien under the laws of North Carolina, subcontractors and laborers are simple contract creditors, having no right of priority in respect to the amount due on the contract superior to other creditors.

4. **Assignments ⊜⟶52—Liens ⊜⟶7—Provision for payment of subcontractor following receipt of money by contractor held not to constitute equitable assignment or give equitable lien.**

   A provision of a subcontract, requiring the general contractor to pay the amounts coming due thereon on the day succeeding the day in each month when the state highway commission should pay the general contractor, but in no case later than the 16th day of the month, did not amount to an equitable assignment of the amount received from the highway commission, or give an equitable lien thereon.

5. **Receivers ⊜⟶209—Court in which ancillary suit pending may protect resident creditors.**

   The court in which a suit ancillary to a receivership suit in another state is brought for the purpose of collecting assets of a corporation and turning them over to the court in which the main cause is pending has power to protect claims of residents of its state based on state statutes, liens, etc.

6. **Subrogation ⊜⟶33(2)—Surety, paying creditors who have no lien on highway or money due under construction contract, acquires none by subrogation.**

   Since creditors of one contracting to construct a highway holding claims for material furnished or labor performed have no lien under the laws of North Carolina on the highway or the funds due the contractor, its surety, on payment of their debts, can take no lien by way of subrogation or substitution.

7. **Principal and surety ⊜⟶169—Contractor's surety held to have contractual right to have reserved percentages applied in payment of claims for which it was liable.**

   A contractor's surety executing bonds conditioned for payment of subcontractors, materialmen, etc., on applications providing that all per-

---

⊜⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

centages retained on account of the contracts, or due at the time of any breach were thereby assigned to the surety, etc., though having no claim on the reserved percentages by way of subrogation or equitable assignment, *held* to have a contractual right, measured by the terms of the contract to have such reserved percentages applied to the exoneration of the loss sustained by the contractor's failure to pay laborers and materialmen.

In Equity. Suit by the Pratt Lumber Company, Inc., against the T. H. Gill Company, in which creditors furnishing materials and labor intervened and sought priority. Interlocutory decree in accordance with the opinion.

H. G. Connor, Jr., of Wilson, N. C., for Pratt Lumber Co. and City Nat. Bank of Binghamton, N. Y.

Edwin H. Moody, of Binghamton, N. Y., for receiver.

Rouse & Rouse, Dawson, Manning & Wallace, Cowper, Whitaker & Allen, and G. G. Moore, all of Kinston, N. C., for intervening creditors.

S. Brown Shepherd, of Raleigh, N. C., and John L. Baker, of New York City, for National Surety Co.

CONNOR, District Judge. This cause is ancillary to an original bill filed by plaintiff against defendant company in the District Court of the United States for the Northern District of New York in which, upon the allegation of the original bill and answer, an order was made in said court, July 13, 1920, appointing Douglas V. Ashley receiver of said defendant company, who duly qualified by filing the bond prescribed in said order, and entered upon the discharge of his duties as receiver.

On the 23d day of July 1920, plaintiff filed in the District Court of the United States for the Eastern District of North Carolina a duly certified copy of the original bill and answer, together with a copy of the orders made in said cause by said court, and at the same time filed in said court for the Eastern District of North Carolina an ancillary bill, praying that, upon the facts appearing in said bill and answer, said Douglas B. Ashley be appointed by this court ancillary receiver of said T. H. Gill Company, whereupon this court on said day made an order appointing said Douglas V. Ashley ancillary receiver of said T. H. Gill Company in said district. Said receiver duly qualified as such ancillary receiver, and entered upon the discharge of the duties of said office, all of which will appear by reference to the records of this court in said cause.

At the time said Douglas V. Ashley was appointed receiver of said T. H. Gill Company in the Eastern District of North Carolina, said T. H. Gill Company was engaged in the construction of three highways in the county of Lenoir, state of North Carolina, known as Federal Aid Projects, Nos. 1, 49, 53, and 60, under a contract entered into by and between said T. H. Gill Company and the state highway commission of North Carolina. The work to be performed by said T. H. Gill Company in accordance with the said contract was not, at that time, completed. That said contract was, after his appointment, completed by

said receiver under the order of the said court and with the approval and consent of the National Security Company.

Pursuant to the provisions of the contract between the T. H. Gill Company and the state highway commission, the National Security Company, at the request of said T. H. Gill Company, executed a bond as security of said T. H. Gill Company, bearing date January 6, 1920, in the penal sum of $50,000, conditioned that—

The said T. H. Gill Company should, "in all respects, comply with the terms of the contract and conditions thereunder, * * * complete the work contracted for and save harmless the state highway commission of North Carolina, from any expense incurred through the failure of said contractor to complete the work as specified, or for any damages growing out of the carelessness of said contractor, or its agents or servants, or for any liability for payment of wages due or material furnished said contractor; and should well and truly pay all and every person furnishing material or performing labor in and about the construction of said roadway all and every sum or sums of money due him or them, or any of them, for all such labor and materials for which the contractor is liable."

At the time said Douglas V. Ashley was appointed receiver of said T. H. Gill Company, in the Eastern District of North Carolina, said T. H. Gill Company was also engaged in the construction of a highway in the county of Lenoir, state of North Carolina, known as the Pink Hill Road, under and pursuant to a contract entered into between the highway commission of Lenoir county and T. H. Gill Company. The work to be performed under said contract was not, at that time, completed.

At the request of said T. H. Gill Company the National Surety Company executed, as surety for said T. H. Gill Company, a bond in the penal sum of $15,000, conditioned that said T. H. Gill Company should "perform the provisions of said contract for building said road and pay all claims of subcontractors, materialmen, furnishers of equipment or apparatus, foremen and laborers, any or all claims arising from the carrying forward, performing and completing the attached contract. * * * It is expressly understood that this bond shall be for the benefit of the materialmen or laborer having a just claim, as well as for the benefit of the highway commission of Lenoir county and the county."

At the time of the appointment of said Douglas V. Ashley, receiver, certain persons had, prior to the appointment of said receiver, furnished material and performed labor in and about the construction of the roadways for the construction of which the said contracts were made; there was, at that time, and is now, due certain persons for labor and material aggregating about $12,500.

The contracts between the said T. H. Gill Company and said highway commission provide that payments shall be made for the work once a month up to 85 per cent. of the relative value of the work done as estimated by the engineers in charge, and that, pursuant to such provisions, there has been retained by said highway commission 15 per cent. of the estimated price to be paid for the work performed by said T. H. Gill Company prior to the receivership and 15 per cent. of the agreed price of the work completed by said Douglas V. Ashley under the receivership which sum amounts to approximately $35,000.

Said Douglas V. Ashley, as receiver, has completed the work which said T. H. Gill Company agreed and contracted to complete under the terms of said contract, and there is now due him, or such parties as may be entitled thereto, the sum of approximately $35,000, in addition to certain other sums, the amount of which is not now ascertained, which sum was in part for work done under the receivership and in part for the percentages retained out of each monthly estimate of work done prior to the receivership.

In respect to the claim of D. Ferris and A. W. Wooten, hereinbefore set forth, the contract entered into between said Ferris and Wooten and said T. H. Gill Company, upon which said claim accrued was in writing, bearing date May 21, 1920. The seventh paragraph thereof contained the following language:

"The said first party [T. H. Gill Company] shall pay unto the second parties [Ferris and Wooten] the amounts to become due thereon for the performance of the above specified work under this contract on the day succeeding that day each month when the state highway commission shall pay unto the first party herein its estimate covering the work herein provided for, but in no month shall the payment to the second parties herein be later than the 16th day of the month; provided the first party herein may withhold 15 per cent. of each monthly payment becoming due the second parties until the work provided for is completed and accepted by the state highway commission, treating each project separately."

The aforesaid creditors of the said T. H. Gill Company, furnishing material and performing labor as hereinbefore set forth, have intervened in this cause, and ask the court to adjudge that, in respect to their said claims, they are entitled to a priority in the distribution of the amounts due the receiver over and in preference to the rights and claims of the general creditors of T. H. Gill Company.

On July 20, 1921, the National Surety Company filed in the court a motion for an order directing the receiver to hold certain funds in North Carolina, and also that an order be made for the deposit of sufficient funds received or to be received from the state highway commission by said receiver to cover the claims for labor and material as found herein.

The Pratt Lumber Company, plaintiff herein, and the City National Bank of Binghamton, N. Y., general creditors of T. H. Gill Company, intervened for the purpose of resisting the claims of the intervening creditors of T. H. Gill Company and the National Surety Company, insisting that said creditors have no lien upon, or priority in, the distribution of the amounts received by said receiver or to be received from said highway commissions on account of said contracts or the work performed thereunder.

An order was made referring to Joseph B. Cheshire, Jr., Esq., as special master, the questions of fact raised by the several matters in controversy. The foregoing statement is based upon his findings of fact and the agreement submitted by the parties and the intervening petitioners.

The first question, in order, is presented by the claim of the creditors who furnished material and performed labor under contracts with T. H. Gill Company in the construction of the roadways pursuant to the

terms of the contract between said T. H. Gill Company and the highway commissions as hereinbefore set forth.

[1] It is manifest that the rights of such creditors, in respect to liens, are dependent upon and fixed by the statute law of North Carolina. The contract was made and was to be performed in this state. Whatever rights, therefore, in respect to a lien upon the property in the construction of which, or furnishing materials or performing labor thereon, said creditors may have, if any, is dependent upon the statutes of this state.

[2] The lien provided for work and material, or the laborers and materialmen's lien, is secured by the statutes of North Carolina. Consolidated Statutes 1919, § 2433. The Supreme Court of North Carolina has uniformly held that a public building, constructed and used for public purposes, is not subject to this lien. In Snow v. Commissioners, 112 N. C. 335, 17 S. E. 176, it was held that: "A courthouse cannot be made subject to any lien for labor or materials." In Hardware Co. v. Graded School, 150 N. C. 680, 64 S. E. 764, 134 Am. St. Rep. 953, 17 Ann. Cas. 130, the principle was applied to a debt for supplies furnished in the building of a public schoolhouse and, upon the authority of Snow's Case it was held that such creditor had no lien. Decisions by courts of other states to the same effect were cited by Mr. Justice Walker, notably the opinion of Mr. Justice Holmes in Lessard v. Inhabitants of Revere, 171 Mass. 294, 50 N. E. 533; also Foundry v. Aluminum Co., 172 N. C. 704, 90 S. E. 923; Hutchinson v. Commissioners, 172 N. C. 844, 90 S. E. 892. It is settled that the right to a statutory lien given by the statute (Consol. Stat. 1919, § 2433) does not apply to public works as uniformly held by the Supreme Court of this state. The decisions are in accordance with those of other courts, state and federal. In re Fowble (D. C. Md.) 213 Fed. 676; In re Schilling (D. C.) 251 Fed. 966; Illinois Surety Co. v. Davis, 244 U. S. 376 (380), 37 Sup. Ct. 614, 61 L. Ed. 1206.

Such right as the subcontractors, furnishing material or performing labor, under contract with T. H. Gill Company, the contractors, have in the fund, is dependent upon the provisions of the North Carolina Statute. Consol. Statutes 1919, § 2437, c. 49, art. 2, which provides that—

"All subcontractors and laborers who are employed to furnish or who do furnish labor or material for the building * * * any house or other improvement on real estate have a lien on said house and real estate for the amount of such labor done or material furnished, which lien shall be preferred to the mechanic's lien now provided by law, when notice thereof shall be given as hereinafter provided, which may be enforced as other liens in this chapter," etc.

Section 2438 et seq. prescribes the mode of procedure by which the subcontractor or laborer may effectuate and enforce the lien conferred by section 2437.

In Foundry Company v. Aluminum Company, 172 N. C. 704, 90 S. E. 923, Justice Allen, after reviewing the legislation and decisions of the court relating to the lien of the subcontractor and laborer and the method prescribed for its enforcement, concludes that—

"The right, however, to share in the fund due by the owner to the contractor and to have that fund distributed pro rata among the claimants is a statutory right, and is dependent upon acquiring a lien on the property by giving the notice to the owner; and if no lien on the property is or can be acquired, no duty or obligation is imposed upon the owner by giving the notice."

This language is quoted by the court in Hutchinson v. Commissioners, supra, saying in conclusion:

"And the authorities are all to the effect that no lien can be acquired against public buildings. * * * It follows that as the Cruse Company [the subcontractor] acquired no lien upon the property by giving notice to the owner, it thereby imposed no obligation upon the owner with reference to the amount due the contractor." Hall v. Jones, 151 N. C. 419, 66 S. E. 350.

The reason upon which the courts hold that the statutory lien given contractors, subcontractors, materialmen, and laborers upon buildings or other improvements upon real property for work, material, and labor does not extend or apply to public buildings is that such buildings, being held for public governmental purposes, cannot be sold under execution or other final process, and applies with peculiar force to materials furnished or labor performed in the construction or repair of public highways. The public has only a right of way or an easement over the land upon which they are laid out and constructed for the public use. The county authorities, nor any other public agency to which the power to contract for their construction or improvement, have no power to sell such easement or dispose of it nor by any contractural obligation to impose any burden or lien upon it. It would be to keep the promise to the ear and break it to the sense to give a lien upon property and deny the power to enforce it. Hardware Company v. Schools, 151 N. C. 507, 66 S. E. 583. It is therefore clear that neither T. H. Gill Company nor its subcontractors, nor persons to whom it became indebted for materials or labor furnished or performed in the performance of its contract, acquired any lien upon the highway constructed by it or them. It was to meet this condition and protect such subcontractors, materialmen, and laborers for amounts due them from contractors engaged in the construction of public buildings or structures belonging to the National government that Congress passed the act requiring the contractors' bond and providing for the payment of the claims of materialmen and laborers. Act August 13, 1894, as amended by Act February 24, 1905; 32 Stat. L. 811 (Comp. St. § 6923); 8 Fed. Stat. Anno. (2d Ed.) 374; People v. Met. Surety Co., 211 N. Y. 107, 105 N. E. 99; Illinois Surety Co. v. U. S., 226 Fed. 653 (659), 141 C. C. A. 409; Illinois Surety Co. v. Davis, 244 U. S. 376, 37 Sup. Ct. 614, 61 L. Ed. 1206. The same purpose to meet the same condition moved the Legislature of North Carolina to pass the Acts of 1913 and 1915; section 2445, Consol. Stat. 1919. The acts have substantially the same provisions as to materialmen and laborers as the federal statute.

It follows, therefore, that as the contractor had no lien on the highway, the subcontractors, materialmen, and laborers to whom it is indebted can have none. As said by the court in Charlotte Pipe & Foundry Co. v. Aluminum Co., 172 N. C. 704, 90 S. E. 923:

"The right to share in the fund due by the owner to the contractor * * * is a statutory right and is dependent upon acquiring a lien upon the property

by giving notice to the owner and if no lien on the property is nor can be acquired no duty or obligation is imposed upon the owner by giving notice."

[3] In the absence of a lien by the contractor, the subcontractor or laborer on the building or structure is a simple contract creditor of the contractor, and has no lien or priority upon or in respect to the amount due from the owner of the property superior to other creditors. It was so held by the Supreme Court of North Carolina in Mfg. Co. v. Andrews, 165 N. C. 285, 81 S. E. 418, Ann. Cas. 1916A, 763, and Ingold v. Hickory, 178 N. C. 614, 101 S. E. 525, in which the legislation upon the subject is reviewed by Justice Allen. The claim of priority over the general creditors of T. H. Gill Company asserted by the creditors who furnished materials or performed labor cannot be sustained.

[4] Ferris and Wooten, who performed labor and furnished materials to T. H. Gill Company on account of the construction of the highways, for which the special master finds that said company is indebted, rest their claim to be paid out of the amount due the receiver by the highway commission upon the terms of the contract under and pursuant to which the work was done, by the terms of T. H. Gill Company obligated to pay them—

"the amounts to become due thereon for the performance of the above specified work under this contract on the day succeeding that day of each month when the state highway commission shall pay unto the party of the first part herein its estimate covering the work herein provided for, but in no month shall the payment to the second parties herein be later than the 16th day of the month."

It is contended by counsel for these creditors that this language constitutes an equitable assignment of so much of the amount due T. H. Gill Company at the end of each month as is sufficient to pay the subcontractors the amount due them on said contract at that time.

In Christmas v. Russell, 14 Wall. (81 U. S.) 69, 84 (20 L. Ed. 762), it is said:

"An agreement to pay out of a particular fund, however clear in its terms, is not an equitable assignment; a covenant in the most solemn form has no greater effect. The phraseology employed is not material provided the intent to transfer is manifested. Such an intent and its execution are indispensable. The assignor must not retain any control over the fund—any authority to collect, or any power of revocation. If he do, it is fatal to the claim of the assignee. The transfer must be of such character that the fundholder can safely pay, and is compellable to do so, though forbidden by the assignor."

In Ketchum v. St. Louis, 101 U. S. 306, 25 L. Ed. 999, Justice Harlan quotes, with approval, the following from Pinch v. Anthony, 8 Allen (Mass.) 536:

"It is well stated that a party may, by express agreement create a charge or claim in the nature of a lien on real as well as on personal property of which he is the owner or in possession, and that equity will establish and enforce such charge or claim, not only against the party who stipulated to give it, but also against third persons who are either volunteers, or who take the estate on which the lien is agreed to be given, with notice of the stipulation."

In Walker v. Brown, 165 U. S. 654, 17 Sup. Ct. 453, 41 L. Ed. 865, Justice White, after stating the facts in the instant case, says:

"It is clear that if the express intention of the parties was to create an equitable lien upon the bonds or the value thereof, or if such intention arises by necessary implication from the terms of the agreement construed with reference to the situation of the parties at the time of the contract, and by the attendant circumstances, such equitable lien will be enforced by a court of equity."

The learned Justice also quotes with approval the following from Pomeroy's Eq. (vol. 3) par. 1235:

"That every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, a fund, therein described or identified, a securty for a debt or other obligation, * * * creates an equitable lien upon the property so indicated." Ingersoll v. Coram, 211 U. S. 335, 29 Sup. Ct. 92, 53 L. Ed. 208; Barnes v. Alexander, 232 U. S. 117, 34 Sup. Ct. 276, 58 L. Ed. 530; U. S. v. Taylor (D. C.) 268 Fed. 635.

Tested by these authorities and the principles announced by them, it would seem clear that the contract between T. H. Gill Company and Ferris and Wooten constituted neither an equitable assignment of the amount received, or to be received by it, from the highway commission nor an equitable lien thereon. The reference to the payment of the installments by the highway commission simply fixed the time at which the T. H. Gill Company were to pay for the work, as it progressed by the subcontractor. The contention of Ferris and Wooten cannot be sustained.

The next claim in order is asserted by the National Surety Company by its petition filed July 20, 1921. The petition states that—

"The contract between the highway commission and T. H. Gill Company provides for the retention of 15 per cent. of the contract price as each payment is made until final settlement; that the highway commission has retained over $15,000 so far on account of said contracts; that claims for materialmen and laborers have been made against the said surety company; that the receiver has not made provision for the retention of funds in the state of North Carolina that have been or may be, received from the highway commission on these projects in which the surety company looks for protection."

It prays that the receiver be required to deposit in North Carolina a sufficient amount of funds to cover all claims for material and labor, and that said funds be distributed under the orders of this court.

[5] It may be that this claim should have been set up in the court having original jurisdiction in the cause rather than here, where the proceeding is only ancillary and for the purpose of collecting the assets of the corporation to the end that they may be turned over to that court, where all of the creditors and other parties in interest are before the court, and final decrees may be made disposing of the claims and priorities. It is, I think, within the power of this court in the ancillary suit to protect claims of residents of the state, based upon state statutes, liens, etc. This question has not been raised by the receiver or the general creditors. The several parties in interest have, through their counsel, filed able and enlightening briefs.

The contention of the surety company is based upon several grounds, each requiring consideration.

[6] It is first suggested that the surety company is entitled to invoke the right of subrogation; that is, that upon the payment of such

amount as it may be liable for on account of its suretyship of T. H. Gill Company to creditors of said company for materials furnished or labor performed on the highways, pursuant to the terms and provisions of the contract between T. H. Gill Company and the state highway commission, it is entitled to resort to all liens, rights, or equities held by such creditors against the Gill Company or the highway commission.

"Subrogation is the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt. * * * Accordingly it has been held that the sureties on the official bond of an insolvent sheriff, who had been compelled to pay money collected by a defaulting deputy, may recover of the sureties on a bond given to the sheriff by the deputy, conditioned upon the faithful performance of his duties. * * * As soon as a surety has paid the debt an equity arises in his favor to have all the securities which the creditor holds against the principal debtor transferred to him, and to avail himself of them as fully as the creditor could have done." Shepherd, C. J., in Liles v. Rogers, 113 N. C. 197, 18 S. E. 106, 37 Am. St. Rep. 627.

The learned Chief Justice further says:

"It is further to be observed that the party for whose benefit the doctrine of subrogation is invoked and exercised can acquire no greater rights than those of the party for whom he is substituted, and if the latter had not a right of recovery the former can acquire none." Sheldon on Subrogation; 1 Beach, Modern Eq. Jur. 797.

So, in American Bonding Co. v. National Bank, 97 Md. 598, 55 Atl. 395, 99 Am. St. Rep. 466, it is said:

"The general equitable doctrine of subrogation by which a surety who has paid the debt of his principal becomes entitled to all the rights of the creditor against the principal debtor and to the benefit of all securities for the debt held by the former against the latter, is universally recognized."

The doctrine has not been more strongly and clearly stated than by Chancellor Kent in Hays v. Ward, 4 Johns. Ch. (N. Y.) 123, 8 Am. Dec. 554, in which he says:

"A surety will be entitled to every remedy which the creditor has against the principal debtor, to enforce every security, and to stand in the place of the creditor and have his securities transferred to him, and to avail himself of those securities against the debtor."

The limitation upon the right to subrogation is incident to the essential character of the right itself—substitution. . Therefore it is well settled that—

"One for whose benefit the doctrine of subrogation is invoked and enforced can acquire no higher or greater rights than those of the person for whom he is substituted. The rights of the person subrogated are measured by those of the original creditor, and cannot be extended further. He succeeds to no rights not held by the creditor." Note to Am. Bonding Co. v. National Bank, supra, 99 Am. St. Rep. 486, and cases cited.

The principle upon which courts of equity proceed in administering the doctrine is sometimes illustrated by saying that, as equity regards that as done which ought to be done, the rights, remedies, liens, and securities held by the creditor whose debt is paid by the surety will be regarded as having been assigned by such creditor upon the payment of his debt by the surety.

If, therefore, the creditors of T. H. Gill Company, holding claims against it for material furnished or labor performed on the highway for the payment of which the surety company is bound, have no lien, statutory or otherwise, upon the highway, or the funds due T. H. Gill Company on account of the contract and its performance, it is clear that the surety company, upon the payment of their debt, can take no lien by way of subrogation or substitution. This is well illustrated by the case of Am. Surety Co. v. Finletter. (C. C. A. 3d Cir.) 274 Fed. 152, relied upon by the intervener. In that case Peoples Bros. entered into a contract with the city of Philadelphia, for the erection of a power house. The contractor executed a bond to the city, conditioned for the payment of all claims for labor performed and material furnished under the contract. The contractor failed to perform the contract, and a receiver was appointed. During the progress of the work the city retained 15 per cent. of the amount due. The surety company completed the contract, and received from the city the amount due, including the retained percentage. The receiver demanded so much of the retained percentage as was due on the work completed by the contractor before the receivership. The District Court awarded this amount to the receiver for the benefit of general creditors, thereafter treating the surety as a general creditor from which decree the surety company appealed. The surety company invoked the right to subrogation.

Affirming the decision of the District Court, it is noted that, under the law of Pennsylvania the laborers and materialmen did not have any right against, or lien upon, the percentage retained by the city, but were merely general creditors of the contractor. Judge Woolley said:

"In this state of the law—laborers and materialmen having no right to reserved percentages—there were, as to them, no rights to which the surety company could be subrogated. Likewise Peoples Bros., Inc., has no rights in the fund to which the surety company could be subrogated. Obviously there was no right of subrogation anywhere."

In National Surety Co. v. Berggren, 126 Minn. 188, 148 N. W. 55, the claim of the surety company was based upon an assignment and subrogation. Bunn, J., putting aside the assignment theory, says:

"It must be, and is, conceded that the Stromberg-Carlson Company, had its claim not been paid by plaintiff, would have had a right to be paid out of the fund retained by the state that would be superior to any assignment of the fund by Berggren. It is clear that plaintiff was obliged, under the terms of the bond, to pay this claim. It would seem to follow that upon such payment plaintiff was subrogated to all the rights of the Stromberg-Carlson Company."

In Alfred Richards Brick Co. v. Rothwell, 18 App. D. C. 516, the right to subrogation by the surety, who had paid claims against the principal, adopted by the court, that—

"There is therefore by necessary implication, an equitable lien and preference secured in favor of the parties who furnish labor and materials in the execution of the court, in the application or distribution of the contract price remaining to be paid; and when the government, as in the present instance, holds in its hands any part of the money contracted to be paid for the work, and there remain unpaid claims for labor and materials supplied, it holds such fund as quasi trustee for the benefit of those entitled to receive it under the condition in the bond; that is to say, the laborers and materialmen remaining unpaid."

From this basic proposition, that the materialmen and laborers have a lien on the contract price, the learned judge logically concludes that the sureties on the bond are subrogated to such lien, upon payment of the claims. That the court rested its decision upon the proposition that the materialmen and laborers had a lien is manifest from the language of the judge who says:

"The practical effect of the statute is to confer a special lien in favor of such persons * * * and to substitute the bond, in the place of the public building as the thing upon which the lien is charged."

The decision is based upon the construction of the federal statute. As we have seen, under the statutes, as construed by the Supreme Court of this state, the laborers have no such lien. Herein lies the distinction between these and the instant case. This distinction is clearly stated in American Surety Company v. Finletter, supra.

The equitable lien, or charge, theory, under substantially the same conditions as in the instant case, was sought to be applied in Re Fowble, (D. C. Md.) 213 Fed. 676. The facts, as stated by Judge Rose, were that Fowble contracted to construct a state building. The Fidelity & Deposit Company became security on its bond. Certain persons supplied materials to the contractor for the building, and, their debts not being paid, filed notice of lien under Maryland lien laws. The contractor was adjudged a bankrupt, and a trustee appointed. The balance due on the contract price was paid into the registry, subject to the decrees of the court, in regard to their rights. The materialmen claimed an equitable lien, which should be discharged from the funds. Judge Rose held that, because of the character of the buildings, no lien attached for material. Referring to the contention that the materialmen had an equity in the fund superior to that of the trustee, he said:

"Most men feel that one who has contributed to the creation of anything of value stands in a peculiar relation to it. He has a special claim to be paid out of it. The mechanic and other lien laws of so many jurisdictions are the expression of that conviction. The courts, however, have not seen their way clear to make it a generally applicable principle of equitable jurisprudence. It has had its part in shaping many a rule administered in chancery, but complete recognition has been withheld from it. The difficulty, in many, if not in most, cases, the impossibility, of accurately and justly defining its limits have amply justified the hesitation of the courts. If mechanic's lien laws prove the strength of its appeal to an instinctive sense of natural justice, they demonstrate that it is usually impossible to apply it beyond the limits to which the statutes go."

As said by the learned judge, the effort to create the equitable lien upon property, howsoever strong, the desire to protect meritorious claims, is difficult, if not impossible, to fix within safe limitations, having regard to the rights of others than the beneficiaries. The equitable lien theory in respect to claims of laborers and materialmen has not been recognized by the courts of this state—they are protected by statutory liens.

[7] Passing, however, these contentions, the National Surety Company insists that, if not entitled to have its petition granted upon the claim for subrogation, it has contract rights, or rights based upon the contract made between the highway commission and the T. H. Gill Company, which entitles it to have the retained percentages applied to

the amount of the debts for material and labor, for which it is liable, and that this claim is sustained by the provisions in the application made by T. H. Gill Company to the National Surety Company to sign the bond to the state highway commissioners, to wit:

"(4) That the surety, or sureties, executing any such bond, or bonds shall have the right and * * * are hereby authorized, but not required (a) if any such bond be given in connection with a contract * * * to take possession of the work under such contract, or of any breach thereof, or of such bond, or bonds, and at the expense of the indemnitors, to complete, or to contract for the completion of the same, or to consent to reletting or completion thereof by the owner.

"(5) If any such bonds be given in connection with a contract, to assign, transfer and set over, and the indemnitors do hereby assign, transfer and set over to the surety or sureties, executing said bond or bonds, such assignment to become effective as of the date of said bond or bonds, but only in the event of any such abandonment, forfeiture or breach thereof.

"(c) Any and all percentages of the contract price retained on account of said contract, and any and all sums that may be due under said contract at the time of such abandonment, forfeiture or breach or that thereafter may become due."

The application to the National Surety Company to sign the bond on account of the contract with the highway commission of Lenoir county contains the same provisions as in the other application, and in addition thereto it is provided:

"(5) This assignment shall be in full force and effect upon and as of the date hereof, should the undersigned fail or be unable to complete the said work, in accordance with the terms of the contract, covered by said bond, or in the event of any default on the undersigned's part under the said contract or in the payment of the premiums.

"(6) That in further consideration of the execution of said bond, the undersigned hereby assigns, transfers and conveys to the company all the deferred payments and retained percentages that may be due and payable to the undersigned at the time of any breach or default in said contract, or that thereafter may become due and payable to the undersigned on account of said contract * * * hereby agreeing that such money and the proceeds of such payment and properties shall be the property of the company and to be by it credited upon any loss, costs, damage, charge and expense sustained by or under said bond."

An examination of the decisions relied upon by the surety company to sustain its claim to the retained percentages upon these provisions discloses that in the majority of them the surety, upon the failure of the principal in the bond to complete the contract, or its abandonment, completed that work under the terms of the original contract. Bank v. City Trust Safe Deposit Co. (C. C. A. 9th Cir.) 114 Fed. 529; Cox v. New England Equitable Ins. Co., 247 Fed. (C. C. A. 8th Cir.) 955, 160 C. C. A. 655; St. Peter's Catholic Church v. Vannote, 66 N. J. Eq. 78, 56 Atl. 1037; Wells v. City of Philadelphia, 270 Pa. 42, 112 Atl. 867; Labbe v. Bernard, 196 Mass. 551, 82 N. E. 688, 14 L. R. A. (N. S.) 457; Prairie State Bank v. U. S., 164 U. S. 237, 17 Sup. Ct. 142, 41 L. Ed. 412.

In this case the receiver, with the approval of the surety, completed the work in accordance with the terms and provisions of the contract; no claim is made against the surety on account of his conduct or administration of his trust. The only breach of the bond, accrued and

was complete before the appointment of the receiver, and this is confined to the failure of the T. H. Gill Company to pay the intervening creditors, holding claims for material furnished and labor performed in the construction of the highway.

As we have seen, the materialmen and laborers had no lien either on the property or the retained percentages, therefore the highway commission was under no obligation to hold them for, or apply to, the payment of their claims—they were, as between the commission and T. H. Gill Company, upon the completion of the work, due T. H. Gill Company. The surety company, for the purpose of this discussion, concedes its liability for the amount due them, as found by the special master.

The question, therefore, to be decided is—What, if any, rights have the surety company in or to the retained percentages due T. H. Gill Company from the highway commission to have the retained percentages applied to the exoneration of its liability on the bond, superior to the rights of the receiver, representing general creditors? It may be conceded, from any viewpoint, when the debts are paid by the surety company, it will be entitled to share in the assets in the hands of the receiver, as a general creditor. It would also seem that the surety company has, in no event, any claim upon the retained percentage, due the receiver on account of work performed by him as receiver in the completion of the contract.

For the present, the consideration of the provisions of the application for the bond as an equitable assignment of the fund will be put aside. We are thus brought to a consideration of the question in the light of the decision in Prairie State National Bank v. U. S., 164 U. S. 227, 17 Sup. Ct. 142, 41 L. Ed. 412, and other cases decided upon the authority of that case. There, Sundberg contracted with the government for the construction of a custom house at Galveston. Pursuant to the provisions of the contract, the government retained from the monthly payments, as the work progressed, the per cent. as provided in the contract. Hitchcock became surety on the bond of Sundberg. There was no provision in the bond obligating the contractor to pay for labor and material. The condition was simply for "the faithful performance of this contract and the agreements and covenants made therein."

In consideration of advancements made by the bank Sundberg gave to one of its officers an order, or power of attorney, authorizing him to collect from the government the final payment due under the contract. The Secretary of the Treasury declined to recognize the order or power of attorney.

Hitchcock, the surety, asserted a claim to the fund, for that Sundberg defaulted on his contract and he, or his surety, without knowledge of the claim of the bank, completed the contract with the consent of the contractors. "The question to be determined," as stated by Mr. Justice White, was "which of the two contestants [the bank or Hitchcock, the surety] possesses a superior right to the fund."

After deciding that the assignment to the bank was void at law under the provisions of the statute prohibiting the assignment of a claim of that character against the government, he says that the bank claims an

equitable lien originating in the attempted transfer, or assignment, and that Hitchcock claimed an equity to the fund, which arose at the time he entered into the contract of suretyship, and was therefore prior in point of time and paramount to that of the bank. The learned Justice says:

"That a stipulation in a building contract for the retention, until the completion of the work, of a certain portion of the consideration, is as much for the indemnity of him who may be guarantor of the performance of the work as for him for whom the work is to be performed; that it raises an equity in the surety in the fund to be created; and that a disregard of such stipulation by the voluntary act of the creditor operates to release the sureties—is amply sustained by authority."

Thus in Calvert v. London Dock Company, 2 Keen, 638 (1838) S. C. 7 L. J. N. S. 90, 48 Eng. Rep. Reprint, 774, it is held:

"When a contractor had undertaken to perform certain work, and it was agreed that three-fourths of the work, as finished, should be paid for every two months, and the remaining one-fourth, upon the completion of the whole work, it was held that the sureties for the due performance of the contract were released from their liability, by reason of payments exceeding three-fourths of the work done, having been made to the contractor, without the consent of the sureties before the completion of the whole work."

Mr. Justice White cites a number of English and American cases, sustaining the decision. He quotes with approval, the language of Mr. Justice Scott in Finney v. Condon (1877) 86 Ill. 78:

"The law upon this subject seems to be, the reserved per cent. to be withheld until the completion of the work to be done is as much for the indemnity of him who may be a guarantor of the performance of the contract as for him for whom it is to be performed. And there is great justness in the rule adopted. Equitably, therefore, the sureties in such cases are entitled to have the sum agreed upon held as a fund out of which they may be indemnified, and if the principal releases it without their consent it discharges them from their undertaking."

In Henningsen v. U. S. Fidelity Co., 208 U. S. 404, 28 Sup. Ct. 389, 52 L. Ed. 547, plaintiff contracted with the government to construct a public building, executing a bond with the defendant company, surety, conditioned for the faithful performance of the contract and "to promptly make full payments to all persons supplying labor and materials in the prosecution of the work."

The buildings were constructed in accordance with the contract, but the contractors failed to pay the claims for labor and material. Pending work on the buildings, the contractor assigned the payment then due, or to become due, to secure payment of a loan. The question to be decided was whether the claim of the surety company for the amount for which it admitted liability to the materialmen and laborers on the fund was superior to the claim of the bank under the assignment. The briefs (208 U. S. 406, 407, 28 Sup. Ct. 389, 390, 52 L. Ed. 547) disclose that the same contentions were made by the bank as by the receiver here—that the contract had been fully performed; the laborers had no lien upon the fund; that the government was under no obligation to pay them; that there was no right of the laborers to which the surety could be subrogated, and no equitable lien, nor any attempt to assign to the surety. The surety company, in its brief, cited authorities

to sustain its claim to the fund. Mr. Justice Brewer, in disposing of the contentions, says:

"Henningsen * * * entered into a contract * * * to construct buildings. The guaranty company was surety on that contract. Its stipulation was not merely that the contractor should construct the buildings, but that he should pay promptly and in full all persons supplying labor and material in the prosecution of the work contracted for. He did not make this payment and the guaranty company, as surety, was compelled to and did make the payment. Is its equity superior to that of one who simply loaned money to the contractor to be by him used as he saw fit, either in the performance of its building contract or in any other way? We think it is."

Citing Prairie State Bank v. U. S., supra, he said: "It seems unnecessary to again review the authorities.".

In Cox v. New England Equitable Ins. Co. (C. C. A. 8th Cir.) 247 Fed. 955, 160 C. C. A. 655, the contractor completed the contract, leaving claims for material and labor unpaid. The government, without knowledge of this, paid the contract price to the contractor, who paid it to a bank on an indebtedness. The trustee in bankruptcy of the contractor recovered the money from the bank as a voidable preference. The court held that the surety was entitled to so much of the fund as was necessary to reimburse it for the amount paid to laborers and materialmen. Hardaway & Prowell v. National Surety Co. (C. C. A. 6th Cir.) 150 Fed. 465, 80 C. C. A. 283; Title Guaranty & Surety Co. v. Dutcher (D. C.) 203 Fed. 167.

The latest case from the federal courts is American Surety Company v. Finletter, supra. As we have seen, the court rejected the theory that the laborers had a lien to which the surety company was subrogated, saying:

"But the surety company did not confine its argument to the question of subrogation, whether within or without the terms of the quoted provision in the contractor's application for bond, but maintained on authority of Prairie State Bank v. United States, 164 U. S. 227, 17 Sup. Ct. 142, 41 L. Ed. 412, and Henningsen v. United States Fidelity & Guaranty Co., 208 U. S. 404, 28 Sup. Ct. 389, 52 L. Ed. 547, that, as a surety—which had paid all laborers and materialmen and had thus released the contractor from his obligations to them and had also satisfied the purpose of the city in requiring an obligation to see that laborers and supplymen were paid—it has an equity in reserved percentages superior to that of general creditors."

The learned Circuit Judge, after discussing the question whether the agreement by the contractor, at the time he applied to the surety company, operated as an equitable assignment, says:

"We are inclined rather to the views of the same court expressed in Ingersoll v. Coram, 211 U. S. 335, 29 Sup. Ct. 92, 53 L. Ed. 208, accepting the rule stated in Walker v. Brown, 165 U. S. 654, 17 Sup. Ct. 453, 41 L. Ed. 865, to the effect that an express executory contract in writing, whereby the contracting parties sufficiently indicate an intention to make some particular property or fund therein described or identified, a security for a debt or other obligation, creates an equitable lien on the property so indicated. [Citing a number of cases.] Applying this rule to cases where a contractor, seeking surety, pledges deferred payments—moneys certain to be due and clearly indicated—as an inducement for the bond, the courts have very generally recognized such a pledge as a valid consideration moving to the surety, first, to induce it to enter into the bond, and second, at a reduced premium because of the reduced risk."

The fund was awarded to the company. The equity for subrogation was rejected.

In Town of Gastonia v. Engineering Co., 131 N. C. 359, 42 S. E. 857, Clark, J., said:

"The American Surety Company having become surety to the engineering company for the faithful performance of said contract, upon any default of its principal, by which it became liable on said bond, if it did not become subrogated to the rights of its principal in this fund, it is at least entitled to have it applied to the payment of these claims for materials, in exoneration of its liability therefor."

In St. Peter's Catholic Church v. Vannote, supra, the surety completed the contract and claimed the retained percentage. The Vice Chancellor said:

"The twenty per cent. was retained as indemnity against failure by the contractors to entirely execute the contract. As against the sureties, the owner was bound to so retain it [the contract so providing]; else he would have, pro tanto, discharged the sureties from their obligations to answer the default of the contractors."

So in Wells v. City of Philadelphia, supra, it is said:

"As to any money retained, the surety then stands to that fund in the same position as the owner of. the property to which the contract relates. The surety's relation, through compulsion (default), dates even with the owner's relation. From this fund and the unpaid contract price it is entitled to sufficient to save itself from loss on its suretyship engagement; nor can the contractor, by assignment or otherwise, deprive it of this right."

The authorities cited sustain the right of the surety to have the retained percentages, provided for in the contract, applied to the exoneration of loss sustained by breach of the condition of the bond.

Difficulty is encountered in resting the claim upon the doctrine of subrogation, or finding, in the language used in making the application for the bond, an equitable assignment as defined and limited by authoritative decisions. This is, especially true if confined to the rule laid down in Christmas v. Russell, 81 U. S. (14 Wall.) 69, 20 L. Ed. 762. It would seem that the better view is that expressed in several of the best-considered cases—that the surety acquires a contractural right, measured by the terms of the contract, between the owner of the property and the contractor, which entitles him to the benefit of such provisions as inure to the protection of the owner, subject of course to his primary right, and reduces the liability. of the surety against loss or damage by the default of the contractor. The language quoted by Judge White in the Prairie State Bank Case from a number .of English and American courts tends strongly to sustain this principle upon which the right of the surety rests.

The question presented here is of more than usual interest to state and county highway commissions with us at this time because of the very large extent to which road building is being prosecuted in this state. Uncertainty in regard to the rights and obligations of all parties to these contracts results frequently in expensive litigation and heavy losses. I have given the subject anxious consideration and the authorities careful examination, reaching the conclusion that the receiver should make settlement with the highway commissions and col-

lect such amounts as may be due on the contracts at the time of his appointment, separating the amount of the retained percentages; that he should retain such percentages until the further order of the court. The amounts due upon the contract, other than the retained percentage, he will administer under the direction of the court having original or primary jurisdiction. This will protect the highway commissions and the National Surety Company. The laborer and materialmen are protected by the bond, and are not interested in the disposition of the funds.

The receiver will settle with the highway commission for the balances due for work performed by him as receiver, and collect such amounts disposing of them under the directions of the court of primary jurisdiction. The costs incurred in the intervention will be paid by the receiver. A decree may be drawn accordingly.