### BOOTH et al. v. GREER INV. CO. et al.
#### No. 663.

District Court, N. D. Oklahoma.
Oct. 17, 1931.

Moss, Breckinridge & Young, of Tulsa, Okl., for complainants.

Poe, Lunday & Morgan, of Tulsa, Okl., for Petroleum Royalties Co., of Oklahoma.

Herbert D. Mason and H. R. Williams, N. A. Gibson, and Joseph L. Hull, all of Tulsa, Okl., for Greer Inv. Co. and others.

KENNAMER, District Judge.

This action was removed to this court from the state district court of Tulsa county, Okl. The complainants seek to cancel certain transfers and conveyances made by the trustees of the Petroleum Royalties Company of Oklahoma, a trust estate, to the Petroleum Royalties Company of Oklahoma, a Delaware corporation, and for an accounting from said corporation, F. H. Greer, L. L. Greer, and J. A. Ruffer, trustees of the trust estate, the Greer Investment Company, and the Oils Properties Company; and the appointment of trustees for the trust estate.

The material facts established by the evidence may be summarized as follows:

The Petroleum Royalties Company, the trust estate, was created by written declaration of trust dated September 19, 1925; F. H. Greer, L. L. Greer, and J. A. Ruffer were designated as and became trustees of the trust estate; the declaration of trust was amended on June 25, 1926, and on June 29, 1928, the original declaration of trust and the amendments thereto were filed for record in the office of the county clerk of Tulsa county, Okl. Paragraphs 6, 7, and 8 of the trust agreement provide:

"Sixth: The Petroleum Royalties Company and its trustees as such, are hereby prohibited from engaging in any business other than the purchase and sale of oil and gas royalties. It shall have none of its funds tied up in oil wells, or in oil lease equipment or operation, or engage in any other business whatsoever, except the royalty business."

"Seventh: This trust is capitalized at Six Million shares, divided into 5,000,000 preferred shares of the par value of $1.00 each, and 1,000,000 common shares of no par value, all to be issued fully paid and non-assessable."

"Eighth: All preferred shares shall be sold by the trustees for the benefit of the trust, at such time and for such price, subject to the limitations herein provided, as shall by them be deemed most beneficial to the said trust. The common shares shall be disposed of by the trustees in their discretion for the benefit of the trust, their decision as to the value thereof and as to any disposition thereof to be final and conclusive in all respects and as to all parties whomsoever."

Paragraph 25 of the trust agreement provides the period of the trust shall be for twenty years; that the trustees may at their discretion terminate the trust hereby created by dividing the trust funds thereof among the shareholders, and, in case of a decision by the trustees to terminate the trust, all property interests owned by the trust shall be converted into money and the proceeds of sale, less actual expenses, distributed in accordance with the respective interests to the shareholders. "That should it seem judicious to the trustees so to do, they may, at their discretion, convey the trust fund and other assets to trustees of a new trust, or to a corporation, being first fully indemnified for any outstanding obligations or liabilities. In such event the new trustees, should conveyance be made to trustees, or the corporation, shall succeed to all the powers conveyed by this trust."

Paragraph 30 of the trust agreement provides: "The ownership of shares hereunder shall not entitle any shareholder to any title in or to the trust property, or right to call for a partition, division or an accounting of the same."

The Greer Investment Company was an Oklahoma corporation, organized by F. H. Greer, and its board of directors was composed of L. L. Greer, wife of F. H. Greer, J. A. Ruffer, bookkeeper, and F. H. Greer. It was provided in the trust agreement: That, in consideration of the Greer Investment Company bearing all expenses of organization of the Petroleum Royalties Company, the trust, "salaries of trustees, office rent, expenses of procuring royalties (exclusive of the purchase price thereof and the fees and expenses of attorneys, geologists or other technical advisers), traveling expenses and other individual expenses of the trustees in connection with the sale of preferred shares (but not including commission paid, if any, to brokers or agents) there shall be issued to said Greer Investment Company, or its assigns, in the discretion of the trustees, in full settlement and in exchange of services and expenditures, certificates of common shares in an amount not exceeding 250,000 shares for each year's service, or in lieu thereof a sum not exceeding ten cents (10) for each preferred share sold."

F. H. Greer caused to be sold 2,187,973 preferred shares of the trust estate, the major portion of which was sold for $1.50 per share, and approximately $2,400,000 was the net amount received on said shares of the trust estate. Many valuable properties were purchased for the trust estate. During all of the activities of the trustees from the time of the

organization of the trust estate until the transfer of all of its assets and properties by the trustees to the Petroleum Royalties Company, of Oklahoma, a Delaware corporation, about January 1, 1931, F. H. Greer and L. L. Greer, trustees of said trust estate, individually and personally engaged in the royalty business.

In the month of September, 1930, F. H. Greer, being desirous of retiring from the royalty business, approached J. Edward Jones, president of the Consolidated American Royalty Corporation, a Delaware corporation, on the subject of purchasing the interest and control of the trust estate; Jones declined to consider the purchase of the control of a trust estate until after such estate had been converted into corporate ownership. Thereafter, about January 1, 1931, F. H. Greer caused to be organized under the laws of Delaware the Petroleum Royalties Company, of Oklahoma, and immediately transferred and conveyed all of the royalty interest, property, and assets of the trust estate to said corporation. The conveyance was made without consultation with the shareholders of the trust estate, and the first notice the shareholders had of the transfer and conveyance of the properties of the trust estate to the corporation was in the form of a letter sent out by F. H. Greer to such shareholders advising them that he had converted the trust estate into a corporation, and they could exchange their shares of stock in the trust estate for an equal number of preferred shares of stock in the corporation. Subsequent to the transfer of the assets of the trust estate to the Petroleum Royalties Company of Oklahoma, F. H. Greer caused to be issued to him and his associates all of the common shares of stock of the Petroleum Royalties Company, of Oklahoma, and sold said shares of stock for a consideration of $250,000 to the Consolidated American Royalty Corporation, of Delaware, of which corporation, J. Edward Jones was the president and active managing officer.

Many of the complainants herein exchanged their shares of stock in the trust estate for shares in the corporation, relying upon the representation that their rights would be the same in the corporation as in the trust estate. They seek to have the property restored to the trust estate upon the ground they were induced to make the exchange of their shares of stock through the fraud of the trustees. Several of the shareholders in the trust estate, who never made the exchange, ask that the property be restored to the trust estate, as the transfer by the trustees was fraudulent and void.

■ All of the complainants herein seek the same relief; the object of their bill is to set aside the transfer of the assets of the trust to the corporation, and to reinstate the trust as the owner of the assets. Many of the complainants still own the shares in the trust estate, while other of the complainants seek additional relief in asking for the cancellation and rescission of an exchange of their shares in the trust for shares in the corporation, by reason of the fraud of the trustees in inducing them to make such exchange. The bill charges, and the evidence establishes, that, after the trustees had created the corporation and had made the transfer of the assets from the trust estate to the corporation, F. H. Greer, one of the trustees, and the one practically in control of the trust estate, sent letters to the complainants and other owners of shares in the trust estate which induced them to exchange their certificates as shareholders in the trust estate for shares in the corporation. This conduct upon the part of the trustees was charged to have been fraudulent in the bill of complainants; and the evidence sustained such charges. It is urged that the bill is defective, in that it is multifarious, for the reason that some of the complainants seek relief in addition to that of these complainants who still hold their shares in the trust estate. Certainly, the relief sought by all the complainants presents a common point of litigation; the subject-matter is the same, and the transaction about which the litigation arose is the basis of complaint for all of the complainants. The fact that some of the complainants, cestuis que trust, were defrauded into an exchange of their shares in the trust by the trustees, who were fiduciaries, and who seek to restore the assets to the trust estate, just as these complainants who retained their ownership in the trust, not having made the exchange, does not render the bill defective. "No bill is multifarious which presents a common point of litigation, the decision of which will affect the whole subject-matter and settle the rights of all the parties to the suit. It is not indispensable that all the parties should have an interest in all the matters contained in the litigation. It is sufficient if each party has an interest in some essential matters involved in the suit and they are connected with the others," said Judge Sanborn in Jones v. Missouri-Edison Electric Co. (C. C. A.) 144 F. 765, 780.

The contention has been made by counsel for the Petroleum Royalties Company, of Oklahoma, a Delaware corporation, that the action should be dismissed as to said corporation because the complainants have failed to comply with Equity Rule 27 (28 USCA § 723). This contention is untenable.

The complainants do not prosecute this action for the benefit of the corporation, but this is an action against the corporation.

In the case of Havner, Attorney General of Iowa, v. Hegnes (C. C. A. 8th Cir.) 269 F. 537, 541 it was held: "The rule referred to provides that where a corporation has a cause of action against third parties, and it refuses to enforce such cause of action in order to protect the rights of the corporation, a stockholder, if he seeks to enforce this cause of action which might have been asserted by the corporation, must plead the matter stated in rule 27, and in such cases the corporation by necessity is made defendant, because it has refused to be plaintiff. The rule is not applicable to the present case. The plaintiff is both a creditor and a stockholder, and the proceeding is directly against the corporation, asserting no right which the corporation could assert in the sense of the rule."

See General Investment Co. v. Lake Shore & M. S. Ry. Co. (C. C. A., 6th Cir.) 250 F. 160.

Furthermore, this case was removed from the state court to the federal court. In such cases the question is whether the state court had jurisdiction, and whether this court has the same jurisdiction in succession to the state court. Evans v. Union Pacific R. Co. et al. (C. C.) 58 F. 497; Maeder v. Buffalo Bill's Wild West Co. (C. C.) 132 F. 280.

In this case the complainants were shareholders in the trust estate. The trustees of the trust in fraud of their rights organized the Petroleum Royalties Company, of Oklahoma, a Delaware corporation, and transferred all of the assets of the trust estate to the corporation, and this action is against the corporation and the trustees to have the trust property restored to the trust, and for an accounting against the trustees for alleged mismanagement of the trust estate.

The contention that the complainants should have made demand upon the trustees to bring the action against the corporation is without merit.

The allegations of the bill, amply supported by the evidence, disclose that the trustees by their acts have abandoned their duties as trustees, and the complainants are entitled to have the trustees make an accounting of their acts during the time they occupied the position of trustees. The evidence presents transactions of the trustees with the trust in which the trustees, while the fiduciary relationship existed, directly or indirectly were the recipients of profits arising from such dealings.

There is a well-established rule in equity that trustees and all other fiduciaries are forbidden from dealing in their own behalf with respect to matters involved in the trust, and this prohibition operates irrespectively of the good faith, or bad faith, of such fiduciaries. It was the duty of the trustees of the trust estate not to accept any position or enter into any relation inconsistent with the interest of the fiduciary relation which they occupied. It was the duty of the trustees to refrain from placing themselves in any position which would subject them to conflicting duties with respect to any matters involved in the trust. Munro v. Smith (C. C. A.) 259 F. 1; Backus v. Finkelstein et al. (D. C.) 23 F.(2d) 357; Oil Fields Corporation v. Dashko et al., 173 Ark. 533, 294 S. W. 25.

It is obvious upon consideration of the provisions found in the articles of the trust agreement that it was intended to vest the trustees with broad powers and unlimited discretion in the management of the trust estate created thereby. It is, however, apparent from a consideration of paragraph 6 thereof that the trustees were prohibited from engaging in any business other than the purchase and sale of oil and gas royalties, and the same paragraph contains the following provision: "It shall have none of its funds tied up in oil wells or oil well equipment, or operations, or engaged in any other business whatsoever except the royalty business."

It is very plain that the trustees were to engage exclusively in the royalty business for the benefit of the trust estate, and, while paragraph 25 lends some color to the contention made that the trustees were authorized to transfer the assets of the trust estate to a corporation, I am of the opinion that the trustees were without authority to transfer the assets of the trust to a corporation, except for one purpose; and that was to one with only the limited powers to perform the duties of the trustees of the trust. The transfer as made to the Petroleum Royalties Company, of Oklahoma, a Delaware corporation, with general powers under its charter to engage generally in the oil business, violates the provisions of paragraph 6 of said articles of trust agreement.

I am clearly of the opinion that under the articles of the trust agreement the trustees were without power to terminate the trust by organizing a corporation and transferring all of the assets of the trust estate to the corporation, without the consent of the shareholders of the trust.

It is definitely provided in paragraph 25 of the trust agreement that, in the event the trustees in their discretion terminate the trust, all of the property interests owned by the trust shall be converted into money and distributed in accordance with the respective interests of the shareholders. The evidence, however, clearly establishes the fact that the trustees transferred the assets of the trust estate to the corporation, in order that F. H. Greer, one of the trustees, could dispose of his interests in the trust estate for a consideration of $250,000, and to enable the purchaser of his interest to obtain the control of the assets of the trust estate, by virtue of the ownership of the common voting stock of the corporation to which the assets of said trust were transferred.

This transfer was for the personal benefit of F. H. Greer, and placed the assets of the trust estate into a corporation under a charter by which it was vested with broad powers to engage generally in the oil business and with authority to incur heavy liabilities, which the trustees of the trust could not do under the articles of the trust agreement.

I therefore conclude that the transfer was void, should be set aside and held for naught, and the assets and property conveyed by the trustees to the corporation restored to the trust estate; and that the complainants are entitled to an accounting. Moreover, if the transfer be not void, it should be set aside as fraudulent. See Jones v. Missouri-Edison Electric Co., supra; Garrett v. Reid-Cashion Land & Cattle Co., 34 Ariz. 245, 270 P. 1044.

Decree may be entered accordingly.