HARTFORD ACCIDENT & INDEMNITY CO. v. PETROLEUM ROYALTIES CO. OF OKLAHOMA et al.

No. 1064.

District Court, N. D. Oklahoma.

Sept. 9, 1938.

H. R. Williams, of Tulsa, Okl., and W. E. Robertson, of Oklahoma City, Okl., for plaintiff.

A. F. Moss and H. R. Young, both of Tulsa, Okl., for defendant.

MURRAH, District Judge.

The facts in this case are not in dispute. The Petroleum Royalties Company, a trust estate, was created according to law in the year of 1925 for the purpose of investing the proceeds of beneficial certificates in oil and gas royalty, the income from which was to be distributed by the trustees thereof to the holders of beneficial interest therein as their interest appear.

There were more than two million preferred certificates sold to the public. The trust estate, at one time, owned more than two hundred producing oil and gas interests, among which was an undivided royalty interest in Seminole County, Oklahoma, the description of which is immaterial. The particular interest was purchased in January, 1928. About the same time the interest became productive and the estate received its pro rata share of the oil produced until April, 1928, at which time the title to which was challenged and suits were filed in the United States District Court of the Eastern District of Oklahoma. The Pipe Line Company, purchasing the oil, refused to pay any royalty owners for any of the oil runs from the said property. By January, 1931, more than $20,000 had accumulated to the credit of the interest claimed by the trust estate. About the same time the trustees for the trust estate, negotiated for the sale of the common certificates of beneficial interest in the trust estate, all of which were owned directly or indirectly by the trustees and which beneficial interest had complete control of the company under the declaration of trust. At the instance of the prospective purchaser of said common certificates of beneficial interest, a Delaware corporation was formed under the name of Petroleum Royalties Company of Oklahoma and it was domesticated in Oklahoma. The corporation had no assets until all the assets of the trust estate were transferred by the trustees to the new corporation, accepting in exchange common stock of the newly formed corporation.

By March 17, 1931, more than 95% of the preferred certificates had been exchanged for preferred stock of the newly formed corporation. F. H. Greer, who had been the principal trustee under the trust, was the President of the new corporation. L. L. Greer and J. A. Ruffer, the other two trustees under the trust estate, were made Vice-President and Secretary-Treasurer of the corporation, respectively. Among the assets transferred from the trust to the corporation was the royalty interest hereinbefore referred to. The corporation, as organized, began immediately to carry on the affairs of the trust. All the income from producing royalties was paid to the corporation but the purchasers of the crude oil from the royalty interest herein referred to still refused to make payment for the royalty by reason of the challenged title. The corporation made application to the Hartford Accident and Indemnity Company for an indemnity bond to be delivered to the Carter Oil Company, the purchaser of the crude oil, to guarantee the payment to the Carter Oil Company for the amount of money paid to the corporation for oil runs from this particular piece of property, in the event the title litigation, referred to, was decided adversely to the interest of the corporation and its predecessor, the trust estate. The bond was duly executed on March 17, 1931, after which the Carter Oil Company paid to the corporation the sum of $21,960.74, the same representing the amount of the oil runs accrued at that time and continued to pay the corporation for the oil runs from this particular property until the sum of $24,213.18 had been paid. In the meantime a group of the beneficial interest holders of the trust estate, who had not agreed to the transfer of the assets of the trust estate to the corporation and who had not accepted stock in the corporation for their preferred certificates, filed suit in the District Court of the United States in the Northern District of Oklahoma, seeking to set aside the transfer on the grounds that the said transfer from the trust estate to the corporation was fraudulent and in violation of the fiduciary relationship between the trustees and the interest holders and therefore void. Certain shareholders, who had agreed to the transfer, joined in the suit.

The United States District Court for the Northern District of Oklahoma rendered judgment for the complainants, there holding:

"That the transfer was void, should be set aside and held for naught, and the assets and property conveyed by the trustees to the corporation restored to the trust estate; and that the complainants are entitled to an accounting. Moreover, if the transfer ·be not void, it should be set aside as fraudulent." Booth v. Greer Inv. Co., D.C., 52 F.2d 857, at page 861.

The decree of the lower court was affirmed by the 10th Circuit Court of Appeals in 62 F.2d 321.

· The United States District Court for the Northern District of Oklahoma in its decree of judgment ordered the corporation to deliver all monies on hand and impounded in the bank to the new trustees, together with all other assets of the corporation, including books, records of every kind and nature. There was supposed to be the sum of $89,000 to the credit of the corporation at the time of the judgment rendered by the court, together with assets estimated to exceed the sum of $300,000, above all liabilities.

It developed later that most of the $89,000 supposed to be in the bank had been used to purchase stock in another oil corporation (Midland Royalty Corporation). This stock was held by the corporation. This stock was found to be worthless and the new trustees refused to accept it.

The litigation involving the royalty interest in question was decided adversely to the trust estate. That is to say, the title originally acquired by the trust estate before the transfer of the same to the new corporation failed in 1934. The purchaser of the crude oil, the Carter Oil Company, was therefore compelled to pay to the prevailing parties the sum of $24,213.18, which it had already paid to the corporation (Petroleum Royalties Corporation of Oklahoma) under the bond executed by it and the Hartford Accident and Indemnity Company, the complainant herein. The Carter Oil Company in turn made demand upon the Hartford Accident and Indemnity Company and the trust estate for reimbursement, after the judgment of the District Court reinvesting the trust estate with the assets of the company under its judgment hereinabove referred to. The trustees refused the demand but the Hartford Accident and Indemnity Company paid to the Carter Oil Company the sum in question and took from it an assignment of its rights against the trust estate and this suit is brought by the Hartford Accident and Indemnity Company against the trust estate upon the original indemnity agreement executed by the corporation to the Hartford Accident and Indemnity Company and upon the subrogation assignment from the Carter Oil Company.

It is not made clear but it is assumed that the indemnity agreement was executed jointly and severally by the corporation and the Hartford Accident and Indemnity Company to the Carter Oil Company and that the corporation executed an indemnity agreement to the Hartford Accident and Indemnity Company pursuant to which the indemnity bond to the Carter Oil Company was executed.

The complainant contends that the complainant's contract with the corporation could have been enforced against the assets in the hands of the corporation if its claim had matured before the transfer by the court back to the trust estate and therefore the rights of the complainant against the corporation cannot be defeated by the judicial transfer of the assets of the corporation by the court back to the trust estate, and that it is entitled to follow such assets into the hands of the trust estate.

The defendants contend that the transfer of the assets of the trust was void because in violation of the terms of the trust agreement and in excess of the power of the trustees and that because they were obtained by fraud and by violation of confidence and fiduciary relationship. The corporation was created by the Court of Equity as a constructive trustee or a trust ex-maleficio and that the property held by the constructive trustee in this manner cannot be subjected by the creditors of the trustees to the payment of debts of such trustees. That the complainant herein is a creditor of the corporation with which it dealt and is entitled only to pursue its remedy against the corporation.

The parties have submitted exhaustive briefs in support of their respective contentions and the case has been orally argued before the court. By reason of the very learned decision of my colleague in holding that the transfer of the assets from the trust estate to the corporation was void or should be set aside as fraudulent, 52 F.2d 857, with which decision I am in complete accord and by reason of the affirmance of this decision by the Circuit Court of Appeals of the 10th Circuit, 62 F.2d 321, and the apparent far reaching effect of this decree as emphasized by the courts, I have

had considerable difficulty in arriving at a conclusion in this case. It is apparent to me that my colleague did not have before him any of the facts constituting the subject matter of this suit nor did he contemplate that such a question would arise—neither did any of the parties hereto. Therefore, in considering all acts of the corporation or the parties in control thereof as void, we must consider that in so doing, the court was acting as a court of equity and with the view of meeting the ends of justice through its inherent equitable powers. We must not assume that the court, while performing its equitable powers of redressing the wrongs perpetuated by fraudulent persons acting in fiduciary capacity, would do an inequitable thing while engaged in such equitable process.

Consider here that the plaintiff herein is a corporation, doing business as an insurance company, a part of its business is to execute indemnity bonds similar to the one herein executed. It had no other relationship with the corporation or the officers thereof. The corporation was organized according to law and domesticated in the state of Oklahoma.

There was nothing in its charter or appearing upon the face of its organization which would put this insurance company upon notice that there were any irregularities in the administration of its affairs. Indeed, 95% of the shareholders in the trust estate agreed to the organization of the corporation and the transfer of the assets of the trust to the corporation and to the right of the former trustees of the trust estate to act as the managing officers of the corporation. The record by its silence affirmatively shows that the complainants herein acted in absolute good faith. The royalty interest in question, the title to which failed, while the corporation held title thereto as a constructive trustee of the trust estate, was originally acquired by the trust estate. If the title thereto had been sustained by the District Court in litigation, the trust estate upon being reinvested with legal title thereto would have no doubt accepted this royalty, together with all other assets it did accept and would have enjoyed the benefits thereof. There would have been no question about the legality of the transaction between the complainant and the corporation. Moreover, if the proceeds paid by the purchaser of the oil runs from this royalty had been in the bank to the credit of the corporation, as the trustees of the estate originally thought, they would have, no doubt, avoided this litigation. This is substantially admitted in the brief of the defendants.

The defendants herein have been the victims of the fraudulent design of those with whom they have entrusted their money and except for the far reaching, tender and merciful hands of a court of equity they would still be at the mercy of the unscrupulous. The defendant relies entirely upon equity to sustain their position in this case and I am very much impressed by the many citations of authorities dealing with the equity powers of the court of equity. A thorough study of these authorities alone has convinced me that the defendants should not prevail. Pomeroy Equity Jurisprudence, Vol. 1 (4th Edition) Section 155, pages 190 and 191. Same (4th Edition) Vol. 3, Section 1053.

Constructive trusts are children of equity and they are recognized by all the courts, as evidenced by the many authorities quoted by the defendants. I am convinced, therefore, that the corporation was by the District Court, in its decision, supra, created as a constructive trustee for the trust estate and was as said in Rollow v. Taylor, 104 Okl. 275, 231 P. 224, syllabi 1 and 2:

"Trusts are children of equity, and equity delights especially, when the case has a flavor of fraud, in protecting trusts and in obliging trustees and trust estates to render to all men their dues.

" 'Constructive trusts' are such as are raised by equity in respect of property which has been acquired by fraud, or where, though acquired without fraud, it is against equity that it should be retained by him who holds it."

This is undoubtedly the law. It is one of the highest precepts of the law, yet there is a limit to how far the courts of equity can go in protecting those who have been defrauded. That limit would seem to me to be, that although it will use its equitable powers to redress the wrongs perpetrated by fraud, it will not by so doing injure another who dealt with the constructive trustee in good faith and permit the beneficiary of its equitable powers to enjoy a gain or a profit at the expense of another who had no relationship with any of the parties except in a strictly legal and business capacity.

I cannot see that it makes any difference that the trust did not receive from the

corporation the money obtained by the corporation from the Carter Oil Company. The trust held the corporation out to the world as its agent and in the last analysis the court constituted it as its constructive trustee and it must suffer the consequences of any loss sustained by it while permitting the said corporation to act in its place instead, if such party acted in good faith and within legal limits.

 In this case, two innocent persons must suffer from the fraud of another. The loss must fall on him whose negligence or imprudence has made possible the perpetration of the fraud. This is equity. See *Noe v. Smith*, 67 Okl. 211, 169 P. 1108, L.R.A.1918C, 435.

· If constructive trusts are raised by equity for the purpose of working out right and justice and is remedial in character, this court cannot in good conscience say that a party guilty of no wrong, collusion or fraud must suffer a loss by reason of the imprudence and negligence of another whose only remedy is in a court of equity and governed by these precepts of the law. *Dickerson v. Colgrove*, 100 U.S. 578, 580, 25 L.Ed. 618; Pomeroy Equity Jurisprudence (3d Edition) Section 155, supra, Chapter 12, Section 160.

 The Court is, therefore, of the opinion that whether· the transfer of the assets from the trust estate to the corporation was void, voidable or fraudulent, the corporation, while so acting as its agent or within the language of the court, as "Constructive Trustee", its acts while dealing with others in good faith without collusion or fraud are chargeable to the cestui que and it cannot avoid responsibility for its acts simply because it suffered a loss thereby.

The court of equity in this case has stretched its arm far and has rightly protected the interest of those defrauded, yet it cannot, in so doing, commit a wrong equally inequitable as it would if it permitted the transfer to stand.

 With respect to the application of the doctrine of subrogation, it is necessary, only to say in addition to what has already been said that the right of subrogation rests purely upon equitable grounds, and will not be enforced against superior equities, *Peoples v. Peoples Bros. Inc.*, D.C., 254 F. 489, and *American Surety Co. of N. Y. v. Finletter*, 3 Cir., 274 F. 152, and that subrogation will be granted or a charge en-

forced in a court of equity only where an equitable result would be reached, but not to work injustice to another in the defeat of an equal equity. *Northern Trust Co. v. Consolidated Elevator Co.*, 142 Minn. 132, 171 N.W. 265, 4 A.L.R. 510.

Under these well established principles, the court is of the opinion that the equities of the complainant are sufficient to justify a recovery under this doctrine, if it were not entitled to recovery under the agreement executed between the corporation and the complainant, pursuant to which indemnity bond was executed.

 The Court is, therefore, of the opinion that the trust is liable to the complainant for the amount expended under the indemnity agreement and that under the agreement the complainant is entitled to a reasonable attorney's fee. The court does not recall having heard any testimony concerning the reasonableness to such attorney's fee. The complainants have asked for $2,500. This has not been challenged but the court feels that $1,500 would be a reasonable attorney's fee for services rendered in this case and the parties may submit findings of fact and conclusions of law consistent with the views herein expressed.